## D. H. SILVER ET AL. v. LEWIS KENT.

1. COMMON CARRIER. *Claim for special damages. Pleading. Practice.*
   In an action to recover damages for the failure of the defendant to deliver goods which he undertook to deliver, as a common carrier, to the plaintiff, if the latter would claim special damages growing out of exceptional circumstances surrounding him at the time of the alleged breach of duty by the defendant, the declaration must contain the averment that the defendant contracted to become responsible for such special damages, or at least, that he knew of the exceptional circumstances. And in the absence of that averment no evidence of such circumstances and damages is admissible on the trial, except where it is averred in the declaration and proven by the evidence that the defendant has been guilty of a wilful, fraudulent, or oppressive breach of duty.

2. SAME. *When exemplary damages allowed. Pleading. Practice.*
   But where the declaration in such case avers that the defendant "wantonly and in gross neglect of his duty as a common carrier, and in reckless disregard of the plaintiff's rights, wilfully refused to deliver the goods," and the proof sustains the averment, the jury may give a verdict, not only for compensatory damages, but also for exemplary damages.

APPEAL from the Circuit Court of Warren County.

MARTIN MARSHALL, Esq., Special Judge, by agreement of parties, Hon. Warren Cowan being disqualified, because having been of counsel in the case.

Lewis Kent sued D. H. Silver and T. W. Shields, as a company of common carriers engaged in the business of carrying freight by steamboat from St. Louis to New Orleans and intermediate points on the Mississippi River. The declaration alleged, " that on the 24th of February, 1881, the defendants received at St. Louis, on board one of their boats, in their capacity as common carriers, for the plaintiff, the following articles, to wit: six whole and six half barrels of flour and twenty barrels of meal, to be by them delivered to the plaintiff, at plaintiff's landing, three miles below the city of Vicksburg, the same being an intermediate point between St. Louis and New Orleans, on said river. That by law it became their duty as such common carriers (and they agreed so to do) to deliver the aforesaid articles, without delay, the dangers of fire, navigation and explosions excepted, to the plaintiff

at his (Kent's) landing, at the point aforesaid, he paying the customary rate of 60 cents per barrel for transportation of the same. Yet the said defendants, not regarding their duty as such common carriers as aforesaid, but contriving and intending to wrong and injure the plaintiff in this behalf, did not deliver said goods to the plaintiff at his landing, or elsewhere, within a reasonable time or any other time ; but on the contrary thereof, the said defendants, wantonly and in gross neglect of their duties as such common carrier, and in reckless disregard of the plaintiff's rights, wilfully refused to deliver said articles, or any of them, to the plaintiff, although the plaintiff was ready and willing to pay the customary and the contract price for the transportation of the same ; by reason of which negligence, wantonness, recklessness and wilful refusal, the said articles, being of the value of $250, became, and were wholly lost to the plaintiff, whereby the plaintiff was put to great trouble, inconvenience, loss of time and expense, and was forced and compelled to procure the same kind of articles elsewhere, at great danger and at the risk and peril of the life of his son, and at extravagant prices, and was otherwise seriously injured to the sum of $5,000," etc.

The evidence showed that the boat carrying the plaintiff's goods did not land at his landing on its down trip, but carried the plaintiff's goods to Warrenton, the next landing below plaintiff's and stored them in a .warehouse, where they remained till the boat returned from New Orleans to Warrenton, when the defendants, learning that because of highwater, Kent could not haul his goods away to his home, took the goods on board their boat and landed with them at plaintiff's landing. The defendants paid storage on the goods at Warrenton, and they demanded of plaintiff that he repay them the storage charges, in addition to paying the freight from St. Louis to plaintiff's landing. The plaintiff offered to pay the freight, but refused to pay the charges for storage at Warrenton. The defendants then refused to deliver the goods and took them back to the consignors, and they were never

received by the plaintiff. As to whether the defendants on their down trip landed at or near the plaintiff's landing, or attempted to do so, or could have done so, and as to the colloquy between the plaintiff and the defendant's agents, when the boat landed on her return trip, the evidence was conflicting, but the opinion of the court states substantially such parts thereof as is necessary to be stated.

The plaintiff testified " that he had to send his son up to Vicksburg that evening (the evening of the day when the boat refused to deliver his flour and meal) in a skiff to get some meal and flour; that they were entirely out on his place and had been so for several days; that the water was all over the land between his place and Vicksburg and he could not get to Vicksburg except in a skiff; that the meal and flour cost him in Vicksburg at the rate of one dollar per barrel more than it cost him at St. Louis; that he had about sixty persons on his place dependent upon him for supplies, and he was compelled to buy more flour and meal at once; that he bought about the same amount he had ordered from St. Louis; that some of his hands threatened to leave him, but none actually left; that he was put to great trouble and inconvenience in being out of provisions for his hands and in getting more." This testimony was objected to as irrelevant and incompetent, but the objection was overruled and it was admitted in evidence.

The defendants excepted to the third instruction given for the plaintiff, which was as follows : " If the jury believe from the evidence that the defendant's failure to deliver the goods either on the down trip of the boat or on the return trip thereof was wanton, wilful and done in a reckless disregard of the plaintiff's rights, they may assess such special damages as they believe the plaintiff has suffered, as it appears from the evidence, and in addition may add to the damages so found, an amount sufficient, in the minds of the jury, to punish the defendants for such reckless disregard of the plaintiff's rights."

The plaintiff testified that the flour and meal which the defendants had failed to deliver him cost "a little over $100 in St. Louis." The jury rendered a verdict in favor of the plaintiff for $300; and from the judgment thereon the defendants appealed.

*Murray F. Smith*, for the appellants.

The court erred in admitting testimony as to the number of hands plaintiff had on his place, and as to said hands threatening to leave him, and that he was put to great trouble and inconvenience in being out of provisions for his hands and in getting more, and that he was out of meal and flour for several days. This evidence was wholly irrelevant and calculated to prejudice the defendants in the minds of the jury. It was not one of the proximate and natural consequences of the breach. It was not one of the consequences which, from the nature and subject-matter of the contract, might be reasonably deemed to have been in the contemplation of the parties at the time the contract was entered into. It was not a necessary and natural sequence of the breach of defendants' contract, and there was no evidence bringing home notice of it to defendants. *Vicksburg and Meriden R. Co.* v. *Ragsdale*, 46 Miss. 483. Moreover there is no averment of such special damages as these. See Hutch. on Car., note 3, sect. 772, and cases cited. The court erred in granting the plaintiff's third instruction. The testimony of plaintiff and of his own witnesses failed to show that in his demand for these charges the captain insulted the plaintiff, or that he used any threatening or abusive language. He was claiming what he thought he had a right to claim. He made the claim in a respectful way, and in holding on to the freight he only exercised a right which the law gave him, if his claim was well founded. There is no conflict of testimony on this point. The conduct of the defendants' officers cannot, therefore, be said to have been wanton, wilful, or done in reckless disregard of plaintiff's rights. When the undisputed facts leave no ground for any inference or doubt, it is error to give an instruction to the jury

which would cause them to believe that such an inference might be drawn from the testimony. Vindictive, punitory, or exemplary damages are only allowed in cases where the defendant acts from malicious motives, or where his conduct was such that malice might be reasonably inferred. When the defendant has acted in good faith, under a mistaken claim of right, and has not in the assertion of such claim acted in a violent, insulting, or oppressive way, then compensation only is the rule. See case of *Tracey* v. *Swartout*, 10 Pet. 80; Sedg. on Dam. 455, *et seq.*; 2 Waite Ac. & Def. 448.

*H. C. McCabe*, for the appellee.

The first assignment of error is not well taken. The reasons given for it are not true, in point of fact. A reference to the declaration will refute the objection that no such damages were laid in the declaration. The injuries complained of were the direct result of the breach of defendant's duty and contract. If the boat had delivered his meal and flour, plaintiff would not have been compelled to send to Vicksburg in a skiff for more, and to pay $1.00 per barrel more than it cost him in St. Louis. Besides the testimony complained of is part and parcel of the history of the transaction, and could not well have been left out. In view of the other testimony it could not have been inadmissible, and if it was, it did not prejudice the defendants, and its admission is not such error as will reverse the case here.

The third instruction is good law, and is laid down in the very language of the books. Counsel for appellants makes no objection to its verbiage, but contends that the evidence does not warrant the jury in acting upon it. There is no motion in this case for a new trial, and the court cannot review the evidence except for the purpose of determining whether there was any room for granting the instruction, and if this evidence proved or tended to prove it, that is the end of the matter; whether it actually established it, was for the jury, and they have by their verdict said that it did. Of course, if there was no room for the instruction, that is to say, nothing on which

the jury might find the truth of it, it was error to give it. Without undertaking to review the testimony at any considerable length, I am willing to assert that if there had been a motion for a new trial, and this court was in a condition to review the testimony, it is so strong that they could not disturb the finding of the jury upon it.

COOPER, J., delivered the opinion of the court.

The declaration does not show that the defendants contracted to become responsible for any exceptional and special damages which the plaintiff would sustain by reason of the exceptional circumstances of his condition, nor that they knew of the existence of any facts which would increase the measure of his damages beyond the ordinary standard. When damages of this character are claimed, it is necessary, at least, to set forth in the declaration the fact that the carrier had knowledge of the exceptional circumstances. *Hadley* v. *Barendale*, 9 Exch. 341; *Vicksburg and Meridian R. Co.* v. *Ragsdale*, 46 Miss. 460.

Mr. Mayne in his work on Damages, sects. 36–43, contends that mere knowledge of the facts by the carrier, is insufficient to enlarge his liability, but that he must have assented to the contract on the terms that he should be thus bound, and cites in support of this view the following cases: *British Columbia Saw Mill Co.* v. *Nettleship*, L. R. 3 C. P. 499; *Landsberger* v. *Telegraph Co.*, 32 Barb. 530; *Herne* v. *Railway Co.*, L. R. 7 C. P. 583; L. R. 8. C. P. 136; *Elbinger Action-Gesellschaft* v. *Armstrong*, *L. R. C. B.* 473; *Simpson* v. *North-Western R. Co.*, 1, Q. B. Div., 274. The plaintiff was not then authorized to introduce evidence of such special loss to enchance the amount of his recovery if the breach of duty of which he complained was not of a wilful, fraudulent, or oppressive character. The declaration, however, charges that the defendants " wantonly and in gross neglect of their duties as common carriers, and in reckless disregard of the plaintiff's rights, wilfully refused to deliver

it,'' and these allegations, if sustained by proof, authorized the plaintiff to ask a verdict not only for compensatory, but for exemplary, damages against the defendants.

Under this allegation a much broader field of investigation was opened to the jury. When actual or compensatory damages only are recoverable, the jury is limited to a consideration of any such as are proximate to the breach of duty. But when the injury is oppressively and wilfully inflicted, the party injured may recover for all actual, though remote, losses sustained. *Bixby* v. *Dunlap,* 56 N. H. 456 ; *Emolien* v. *Meyers,* 6 Hurl. & N. 54 ; Field on Dam., sect. 78.

The testimony for the plaintiff and that for the defendant is in direct conflict, but the jury were the judges of the credibility of the witnesses, and by their verdict have determined the facts to be as testified by the witnesses for the plaintiff. From the statements of these witnesses it appears that the defendants made no effort to deliver the plaintiff's freight as their boat went down the river; that on the return trip of the boat the freight was landed at the plaintiff's residence, but a demand was made for payment not only of the amount due for freight, but for the charges of the warehouseman at Warrenton, where the goods had been stored by the defendants after passing below plaintiff's landing, on the down trip, and where they had remained until the return of the boat from New Orleans ; that the plaintiff refused to pay the charges for storing the goods, but tendered the amount due for freight, and remonstrated with the agent of the defendants, stating that he had been kept out of the use of his goods for eight days by their default; whereupon the agent replied that he would '' keep him out of the use of the goods for eight days more,'' and reloaded them on the boat and carried them away. These statements, if true (and they have been found to be true by the verdict of the jury), evidenced such a wilful disregard of the rights of the plaintiffs and an oppressive use of power by the defendants, as to subject them to the infliction of exemplary damages by the jury. Wherefore the judgment is affirmed.