## TEXAS & PACIFIC RAILWAY COMPANY V. A. L. CORNELIUS.

### No. 1743.

1. **Pleading—Allegation and Proof.**—An allegation that by reason of the wrongs complained of plaintiff was compelled to incur certain expenses, in a stated amount, for medical services and medicines for his wife and child, entitles him to recover such expenses without alleging an actual payment before bringing suit.

2. **Railway Company—Keeping Depot Warmed—Statute Construed.**—The Act of March 6, 1891 (Sayles' Supplement, article 4238¹, imposing a penalty upon railway companies for failure to keep their depots lighted and warmed for not less than one hour before the arrival and after the departure of passenger trains, does not relieve them of liability for failure to so keep them warmed for such further reasonable time as they may be occupied by passengers waiting for delayed trains.

3. **Charge of Court—Verbal Inaccuracy—Diligence.**—Inaccuracy of the court in charging, that "it was the duty of the company to keep its depot reasonably warm," instead of, that it was its duty to use reasonable diligence to keep it warm, is immaterial, where the evidence shows a failure to use any proper diligence.

4. **Continuance—Amendment—Surprise.**—An amended petition filed two days before the trial alleged the date of the transaction complained of as on or about March 1st, instead of March 4th, as in the original petition, but the deposition of a witness on file in the case for several months prior to the trial identified the transaction with certainty, and certain cross-interrogatories of defendant to the witness disclosed that defendant was aware of the discrepancy in the allegation of the date. *Held*, that the amendment, and proof of the transaction as on March 2nd, did not entitle defendant to a continuance on the ground of surprise.

APPEAL from Taylor.  Tried below before Hon. T. H. CONNER.

*B. G. Bidwell*, for appellant.—1.  The statute of Texas prescribes the time railway companies are to keep their depots or waiting rooms warm and lighted before the arrival and after the departure of passenger trains.  This fixes and defines the whole duty of the railway companies in Texas on that subject.  Acts 22nd Leg., chap. 27, p. 29; Acts 21st Leg., chap. 23, p. 19; Schloss v. Railway, 85 Texas, 601.

2.  It was an abuse of judicial discretion to refuse the defendant's motion to withdraw its announcement of ready for trial, on the ground of surprise, and to refuse a new trial on that ground, which was supported by affidavit, when, as in this case, the defendant had been misled by inserting in a citation, at plaintiff's request, a day certain.  Railway v. Pape, 73 Texas, 591; Railway v. Hennessey, 75 Texas, 155; Brown v. Sullivan, 71 Texas, 477; China v. Taylor, 64 Texas, 385; Buford v. Bostick, 50 Texas, 371.

*Cockrell & Cockrell*, for appellee.—1.  The court properly construed the Act of the Twenty-second Legislature, chapter 27, page 29, as requiring defendant to keep its depot properly lighted and warmed a reasonable time, and not less than one hour, before the arrival of the train, and as to what was a reasonable time in this particular instance was an issue of fact properly submitted to the jury.

2. The particular time or place or circumstances of a tort or of a breach of contract are all immaterial, and need not be proved as alleged; and in no event could the statement of such immaterial matters in this case be ground of surprise, because the allegation of the original petition laid the time on or about November 4th, and the first amended original petition stated the time as on or about the 1st day of November, and the proof shows the injuries occurred on the 2nd or 3rd of November. Dempsey v. Taylor, 23 S. W. Rep. (Texas), 221; Bank v. Brown, 85 Texas, 86; Brown v. Sullivan, 71 Texas, 477; Railway v. Evans, 78 Texas, 369.

TARLTON, CHIEF JUSTICE.—On the night of November 2, 1892, N. J. Cornelius, the wife of appellee, was, with her child 13 months old, at Pecos, Texas, a station on the line of the appellant's road. She desired to take passage on defendant's east-bound passenger train, and to go first to Trent station, thence to Abilene, Texas (at each of which places, also stations on the defendant's line, she wished to visit relatives), and thence to her home in Dallas County.

With this view she went with her child to the passenger depot of the appellant at Pecos, about three-quarters of an hour before the time advertised for the departure of the east-bound train. The hour thus advertised was 12:27 a. m. The night was cold, wet, and dark. About half an hour after she reached the depot Mrs. Cornelius bought a ticket for Trent station, paying the proper fare. The agent did not then inform her that the train was late, but when it became due he told her that it was an hour or two behind its time.

About ten minutes after Mrs. Cornelius arrived a fire was built in the passenger room, which, however, was permitted to "die out" about 12 o'clock. The room thereupon became very cold and chilly. In the meantime the lady, who was expecting the train, waited in the passenger room. About 1 o'clock a. m. she went to the room of the agent, knocked at the door, called his attention to the fact that the room was very cold, and requested him to have a fire built. He did not reply, but failed to comply with the request, though he heard it. After waiting an hour or more longer, Mrs. Cornelius again went to the agent's window, requesting him to give her some matches, that she might build a fire, unless he would himself cause one to be made. No reply was made to this request.

The west-bound passenger train arrived about 3:30 a. m. About ten minutes before its arrival a fire was built in the room. Mrs. Cornelius still remained waiting for the east-bound passenger train until 4:30 in the morning, when the agent who sold the ticket to her informed her that the train was eleven hours late. Thereupon a gentleman showed her to a hotel, where she went with her child. She remained without fire in the passenger room from 12 o'clock until 3 o'clock. During this time the door on the south side of the room could not be closed, because it was off its hinges. From the negligent failure of the appel-

lant's agent to keep the room properly heated, Mrs. Cornelius and her child were thoroughly chilled, and as a result they became seriously sick.

On account of this negligence the plaintiff brought this suit to recover damages (1) for the loss of the services of his wife during the time of her sickness, and consequent inability to labor; (2) for the mental and physical pain of his wife proximately resulting from her sickness; (3) for the reasonably necessary expenses incurred for the service of a physician, and for medicines required for his wife and child, as a result of the injuries.

The trial resulted in a verdict and judgment for $1300; and hence this appeal.

*Opinion.*—The overruling of the first special exception, complained of by appellant, is approved by us. The exception is as follows: "The plaintiff does not show or aver any fact which entitles him to recover for any suffering or injury done his child. He does not aver that any sum or amount was paid by him for the benefit of the child, and all the averments in plaintiff's petition in reference to the child are improper, as tending to influence a jury improperly."

We can not hold the allegations of the petition showing the sickness of the mother and child, as a result of the defendant's negligence, to be improper. If so, this exception does not point out what averments are so. While the plaintiff did not aver that any amount was paid by him for the benefit of the child, he did allege, that "by reason of the sickness of his wife and child, plaintiff was compelled to *incur* great expense for medical services, to wit, the sum of $50, and for medicines $25."

If he incurred expenses in caring for the child, this was sufficient to entitle him to recover for these expenses, without alleging an actual payment before bringing the suit. He was not permitted to recover for injury or damage to the child, because the jury were expressly instructed, that "they would not consider injury or suffering by the child, and that on account of the child the plaintiff could only recover, if at all, the expense of the physician's services and medicines necessarily incurred by reason of its injuries."

To shield itself from liability under the facts of this case, the appellant invokes the provisions of the Act of March 6, 1891 (article 4238, Sayles' Supplement), which reads as follows: "Every railroad company doing business in this State shall keep its depots or passenger houses in this State lighted and warmed, and open to the ingress and egress of all passengers who are entitled to go therein, for a time not less than one hour before the arrival and after the departure of all trains carrying passengers on such railroad; and every such railroad company, for each failure or refusal to comply with the provisions of this act, shall forfeit and pay to the State of Texas the sum of $50, which may be sued for and recovered in the name of the State in any

court of competent jurisdiction, and shall be liable to the party injured for all damages by reason of such failure."

Under its interpretation of the terms of the article, the appellant requested a special instruction, the refusal of which, in connection with the charge given by the court on the subject indicated, is assigned as error. The special instruction is as follows: "If the jury believe from the evidence that plaintiff's wife went to the defendant's passenger depot at Pecos, Texas, on the night of the 2nd of November, 1892, as averred by him, for the purpose of becoming a passenger on the defendant's east-bound passenger train, it was the duty of defendant to plaintiff's wife to have its depot lighted and warmed for a time not less than one hour before the actual arrival of the train, but defendant was under no legal duty or obligation to keep the depot warmed or lighted for a longer time than one hour before the actual arrival of the train."

The charge given by the court is as follows: "You [the jury] are instructed, that if you should find from the evidence that at the time and place alleged in the plaintiff's petition N. J. Cornelius was the wife of plaintiff A. L. Cornelius, and that within a reasonable time, under all the circumstances of the usual, customary, and advertised time of the departure of the east-bound passenger train of the defendant railroad company, the said N. J. Cornelius, as alleged, together with her child, went to and in the depot or passenger house of the defendant company described in the plaintiff's petition, with the intent and purpose of engaging and taking passage from said depot on said east-bound train to Trent, Texas, another station on defendant's line of road, and that having so repaired to such depot the said N. J. Cornelius applied for and purchased a ticket from said station or depot to said Trent, the agent of the defendant company then and there demanding and receiving from the said N. J. Cornelius the usual and customary fare for such ticket, then and in case you so find the facts, you are instructed that it was the duty of the defendant company to keep and maintain said depot reasonably warm for the use and comfort of the said N. J. Cornelius and her said child during all such time thereafter as the said N. J. Cornelius had the right, under the circumstances, to reasonably expect the arrival of the train upon which she had so engaged passage, and until she was informed, or by the exercise of ordinary care and prudence could have ascertained, that her said train would not arrive within a reasonable time, and should the jury so find, that is, should the jury further find, that after the said N. J. Cornelius had so repaired to defendant's depot and purchased her ticket for Trent (if you here so find), that the said N. J. Cornelius remained in said depot for such time and for such time only as under the circumstances she reasonably expected the arrival within reasonable time of the train upon which she expected to take passage; and should you further find, that during any of the time that the said N. J. Cornelius and her said child reasonably remained in said depot

(if you have so found) the defendant's agents or employes permitted the fire to go out, and said depot to become cold, and that thereby and therefrom the said N. J. Cornelius and her said child took cold and were injured as alleged, and that such injury was the proximate result of such failure or refusal to keep such depot warm, then and in case you so find all the facts, you should find for the plaintiff."

Says Dillon, Chief Justice, in McDonald v. Railway, 26 Iowa, 138: "I have no hesitation in saying that, without any statute enacting it, there is a common law duty on these companies to provide reasonable accommodations at stations for the passengers who are invited and expected to travel on their road. See Caterham R. R. Co. v. London R. R. Co., 87 Eng. C. L., 410." The fact in that case condemned as a violation of this duty was the permitting by the company of the accumulation in the passenger room of a great quantity of tobacco smoke, to the inconvenience and harassment of a lady passenger.

It would thus seem to be equally a neglect of that duty to permit such a room to become cold or to abstain unnecessarily from heating it so as to secure the comfort of the passenger who thus occupies it on the invitation of the carrier. 2 Wood's Ry. Law, 1165; Railway v. Stewart, 57 Texas, 167.

Accordingly, it has been held that a railroad company is liable to persons lawfully on its premises for failure to keep them sufficiently lighted; and this without reference to any statutory provision. Railway v. McKenzie, 2 Posey's U. C., 308; Rozwadosfskie v. Railway, 1 Texas Civ. App., 494; Bishop on Non-Con. Law, sec. 1086. The principle which requires that lights should be sufficiently provided to avoid the consequences of darkness, requires that heat should be reasonably provided for the purpose of avoiding the effects of cold.

It follows, therefore, that it was the duty of the company, in this instance, unless it was relieved by the above mentioned statute, to use ordinary care to heat the room set apart by it for the use of passengers for a reasonable time before the hour advertised for the arrival and departure of its trains. Was it relieved of this duty by the adoption of that statute? We think not. This enactment, as well as that of April 8, 1889, of which it is a substitute, but states the conditions under which the company, on failure to provide light and heat in the manner therein indicated, shall be held liable for the penalty at the suit of the State. It does not purport to define the conditions under which the person injured would be entitled to maintain an action for damages for a violation of a duty which exists at common law, and which is independent of the statute.

If a reasonable construction of this enactment required us to hold that it was intended to relieve the railroad company from obligation to a person injured which existed prior to its adoption, our conclusion might be different; but as we interpret it, the court in the charge complained of applied the correct test of liability, under the evidence introduced. Here it appears that Mrs. Cornelius, by the invitation of

the defendant, repaired to its passenger room, with reference to a time advertised by it for the arrival and departure of its train; that she remained there reasonably awaiting its arrival; and that defendant failed to render the room reasonably comfortable, but, on the contrary, unreasonably permitted it to become cold and dangerous to the health of its guest. We can not, under such circumstances, ascribe to the Legislature, in the absence of positive provision, an intention to relieve the company from a responsibility which naturally inheres to the character of the engagements assumed by it to those whom it has undertaken to transport as passengers.

The instruction given was probably faulty in stating, that "it was the duty of the company to keep its depot reasonably warm," instead of charging that it was its duty to use reasonable diligence to so maintain it. This feature, however, is not complained of, and had it been, it would have been of no avail, because under the evidence it could not be held that any diligence in the direction indicated was used by the defendant, if the court applied the test which otherwise properly controlled.

The plaintiff's original petition alleged the wrongs complained of to have occurred on or about November 4, 1892. The citation served upon the defendant, and prepared under the direction of plaintiff's attorney, referred the date of these wrongs to November 4, 1892. Two days before the trial of the cause, the plaintiff, by leave of the court, filed an amended petition, on which the parties went to trial, alleging the wrongs to have occurred on or about the 1st of November, 1892. When Mrs. Cornelius testified that the transaction occurred on the night of November 2nd, the appellant's counsel asked leave to withdraw its announcement and to continue the case, on the ground of surprise, in that it had prepared its defense and taken its depositions with reference to the date November 4th. This ground it subsequently reasserted in a motion for new trial, supported by affidavit. It assigns as error the action of the court in overruling its application in each instance.

We are not prepared to sustain this assignment. The defendant must be held to have had notice of the change in the averment of the time effected by the amended original petition, if indeed the allegation as to time should under any circumstances be held to be material. By the testimony of Mrs. Van Horn, whose depositions were filed in the month of March, previous to the trial in October, the transaction was thoroughly identified by the statement of the res gestæ connected therewith. The agent with reference to whose conduct she testified was present in the court and pointed out by her, and the defendant had the full benefit of his testimony. Besides, it appears that certain cross-questions propounded by plaintiff to the witness whose depositions had been taken by the defendant called the attention of these witnesses to the fact that it was on the night of November 2nd, and not of November 4th, that the plaintiff was at Pecos.

Under these circumstances we can not hold that the court abused its discretion in refusing the application to continue, or in overruling the motion for a new trial, upon the grounds relied upon. Guy v. Metcalf, 83 Texas, 37.

The judgment is affirmed.

*Affirmed.*

Delivered March 19, 1895.