FRANK HANSLEY v. JAMESVILLE & WASHINGTON RAILROAD COMPANY.

*Action for Damages—Exemplary Damages—Railroad Companies—Negligence—Failure to Supply a Train.*

1. The true ground for allowing exemplary damages in an action against a railroad company for damages on account of its negligence, is personal injury, or, (in the absence of personal injury) insult, indignity, contempt, &c., to which the law imputes bad motives towards the plaintiff.

2. Where a railroad company, negligently and by reason of defective and inadequate equipment, failed to carry a passenger to whom it had sold an excursion ticket back to his starting point, but no personal injury or indignity was inflicted upon him, the passenger's right of action is *ex contractu* and not in *tort* and hence exemplary or punitive damages cannot be recovered. (CLARK, J., *dissenting.* (Purcell's case, (108 N. C., 414), which was overruled in Hansley's case (115 N. C., 602) is reinstated but the ground of the judgment is changed.)

PETITION to rehear case reported in 115 N. C., 602.

*Messrs. Chas. F. Warren* and *L. T. Beckwith*, for petitioner.

*Messrs. John H. Small, MacRae & Day,* and *W. B. Rodman, contra.*

FURCHES, J.: This is a petition to rehear this case, decided at September Term, 1894, of this Court, and published in 115 N. C., 602. The defendant is a corporation under the laws of this State, running and operating its road between the towns of Washington and Jamesville, transporting both freight and passengers as a common carrier for pay. The plaintiff, a citizen of Washington, wanting to go to the town of Edenton and back, on the 7th of September, 1892, purchased a ticket of defendant to Jamesville, and from Jamesville back to Washington on the 9th. The defendant carried plaintiff to Jamesville on the 7th and he went on to Edenton, and was in that town on the 8th of September. (It is not stated in this case that plaintiff went to Edenton and was there on the 8th, but this was stated and agreed to by counsel on the argument.)

On the 8th of September, soon after leaving Jamesville for Washington, the axle of defendan't engine broke, and when the plaintiff returned from Edenton to Jamesville on the 9th, the defendant was unable to carry him, on its road,

from Jamesville back to Washington as it had contracted to do. Thereupon plaintiff brings this action for damages which he lays at $500, and alleges that defendant's road bed was in a bad, shackling and ruinous condition. That defendant had but two engines, both of which were worn and in bad condition, one of them at that time being in the shops for repair and not in a condition to be used. That the bad condition of defendant's road bed had rattled the other one so as to cause the axle to break. That all this showed such wilful negligence on the part of defendant towards the public, and towards the plaintiff as to entitle him not only to compensatory damages but to exemplary damages.

The defendant answered denying the allegation of negligence, admits that the road was not in good condition, says it was poor and struggling for existence, and that it was expending the whole earnings of the road, and more, in trying to keep it in good repair and was not able to do so. Therefore, defendant denies that it is liable to plaintiff for anything, and certainly not for punitive damages.

And without reviewing the evidence, it is such as to warrant us in saying that the road bed was in a bad dilapidated and ruinous condition and that defendant had but two engines, and they were old, worn and in bad condition.

That plaintiff is entitled to compensatory damages there can be no doubt. But as to whether he is entitled to exemplary damages is the question.

It is said that railroads are quasi-public servants. That they are created by the public (the legislature) and owe duties to the public in return for their right of franchise. And while this is true it can only be considered by us as a reason for establishing the law, as we shall find it, and not as a reason for us to establish the law.

Nor can we consider the question as to whether defen-

dant's road is a poor corporation, struggling for existence, and expending all its earnings, and more, on its road; or whether it is a rich corporation. These are questions we have no right to consider in passing upon the question of law as to whether the plaintiff is entitled to recover damages against defendant or not. *Taylor* v. *Railroad*, 48 N. H., 317.

The legal question involved in this case is conceded to be an important one, and is entitled to our best consideration. It is one that has been so much discussed by law-writers and by the courts in judicial opinions, in which different phases or facts appear, that it is somewhat difficult to establish ourselves on what we consider solid ground.

Often a very slight difference in the facts changes the reason upon which a case is decided. We find that decided cases, unless closely attended to, are often misleading. Also often a misunderstanding of some of the facts, or an inadvertence to some fact in the case, leads to error. This we think was the case with the learned Justice who wrote the opinion we are now reviewing. In stating the facts in Purcell's case, 108 N. C., 414 he stated that, when the defendant's train passed the depot, it "was overloaded," when there was evidence tending to show that there was room for a number of other passengers. And this was the hypothesis upon which the court was asked to charge the jury and which was refused by the court. This inadvertence, as we think, led the court to overrule Purcell's case, *supra.*

After as full investigation as we have been able to give to this case, we are of the opinion that the true ground for allowing exemplary damages is personal injury to plaintiff caused by the negligence of defendant (and we do not undertake here to enumerate all the causes for exemplary damages, where there is personal injury). And where

there is no personal injury, there must be insult, indignity, contempt, or something of the kind, to which the law imputes bad motive towards a plaintiff, and when they are allowed, they are in addition to compensatory damages. I Sedgwick on damages, 520 ; 5 Am. & Eng. Enc., p. 43, note and cases cited.

This principle we find is recognized and enforced in the following cases :

A railroad conductor kissed a lady passenger on his train and she was allowed to recover punitive damages upon the ground that it was a personal indignity. 5 Am. & Eng. Enc., p. 43.

Where a railroad conductor refused to carry a passenger after he had paid his fare, the road is liable to exemplary damages. 3 Sutherland on Damages, Sections 935 and 937. This is upon the same ground.

Plaintiff is not entitled to exemplary damages, unless there is a wilful or intentional violation of plaintiff's personal rights. *Milwaukee R. R. Co.* v. *Hanes*, 91 U. S., 489.

Where a railroad carried a lady passenger a few hundred yards beyond the station, and upon application of the passenger refused to back the train to the station, but put the passenger out in a driving rain with her infant child and baggage, the defendant was held to be liable to punitive damages. But this was put upon the ground of personal indignity and insult, as all cases we have cited are, and the fact that the passenger could not use her umbrella, got wet and was sick from the effects, was only allowed in evidence upon the measure of damages. But the gravamen of the action was the personal indignity with which the plaintiff had been treated by the defendant. *Railroad* v. *Sellers*, 93 Ala., 13. We might cite many other cases to sustain

the principle we have laid down, but do not deem it necessary.

We make no question, under our system of liberal pleading, that plaintiff may recover either in contract or tort if he has made out his case. But he can no more recover in tort without making out his case, than he could recover in contract without making out his case.

The fact that the defendant's road was in bad condition was no insult or indignity to plaintiff. And, as there was no personal injury on account of its bad condition, this affords him no cause of action. The fact that defendant's engine broke down on the 8th, when plaintiff was in Edenton, was no personal insult, indignity or intentional wrong to plaintiff. No doubt the defendant regretted the breaking down of the engine as much as plaintiff. The fact that plaintiff had a right of action for breach of the contract, gives him no right of action for tort against the defendant. And, unless he had the right to maintain an action of tort, he had no right to punitive damages. There can be no damage recovered when there is no right of action. Damages are not the cause of action, but the result of the action.

Taking all the evidence in the case offered by the plaintiff, or that may be considered in his favor, we do not think it makes a cause of action against the defendant, in tort, and that the defendant was entitled to have his second prayer for instruction submitted to the jury, to-wit: "Taking the entire evidence in view, the plaintiff is not entitled to punitive damages." This was refused by the court, and we think there was error.

We have arrived at our conclusion by a different treatment of the case, to some extent, from that adopted by the court in the opinion published in 115 N. C., 602. But our judgment is the same. And in this opinion we do not think it necessary to disturb the judgment as announced

HANSLEY *v.* RAILROAD.

in Purcell's case, *supra.* But the judgment in that case
should be put upon the ground that the defendant treated
the plaintiff Purcell with indignity and contempt in rush-
ing by the station at faster speed, when there was room for
other passengers, or at least when there was evidence tend-
ing to show this, and the court refused the prayer for
instruction submitting this question to the jury. The
petition is dismissed.

Dismissed.

CLARK, J. (concurring in part): Concurring in the
opinion in so far as it reinstates the authority of *Purcell*
v. *Railroad,* 108 N. C., 414, the vast and growing impor-
tance of the principales involved in this case to every one
who shall travel over, or ship freight by, these great public
agencies, forbids my acquiescence in some of the reason-
ing relied on in the present case.

In the recent case of *Railroad* v. *Prentiss,* 147 U. S.,
106, Mr. Justice GRAY commends the historical instruc-
tion of Chief Justice PRATT (afterwards Lord Camden)
that "a jury have it in their power to give damages for
more than the injury received. Damages are designed not
only as a satisfaction to the injured person but likewise as
a punishment to the guilty to deter from any such pro-
ceeding for the future, and as a prof of the detestation
of the jury of the action itself." And Mr. Justice GRAY,
for the Court adds, "The doctrine is well settled" that the
jury in addition to compensatory damages "may award
exemplary, punitive or vindictive damages sometimes
called smart money, if the defendant has acted wantonly....
or with criminal indifference to civil obligations." In the
present case his Honor below charged the jury that "If
defendant failed to provide proper means for transporta-
tion of passengers, as for instance the plaintiff in this case

HANSLEY *v.* RAILROAD.

as they had undertaken to do, *wantonly and wilfully*, the jury may give punitive or punishing damages : and the amount of such is largely a matter for the jury to determine, but the court will supervise so as to see that no wrong is done." This sums up in a few words the whole controversy in this case and it is this charge which "is this day brought into question." In Purcell's case, *supra*, this Court in a unanimous opinion laid down the wholesome and it would seem the necessary principle that for the *wilful and wanton* violation by a railroad corporation of the regulations prescribed for its control and conduct by the law-making power (*Code*, Sec. 1963) such corporation is liable to punitory damages. These words *"wilful and wanton"* have a well defined meaning in our courts and have been construed in *State* v. *Brigman*, 94 N. C., 888, and *State* v. *Morgan*, 98 N. C., 641, to mean "purposely, intentionally and with reckless disregard of the rights of others." Our courts have upheld the authority to grant punitory damages in all proper cases, and if they could ever be granted against a corporation in any case it would seem certainly they should lie whenever the conduct of its officials has shown a "wilful, intentional violation" of the statutes enacted by the legislature for the control of these corporations and a "reckless disregard of the rights of the traveling public" or shippers of freight.

The sovereignty which through its agents created and gave existence to this corporation has recognized this rule as wholesome and just, for in the Act creating the Railroad Commission (Act 1891 Ch. 320, Sec. 11), it is provided in almost identically the same words (indeed, the very same, leaving out the word "wantonly") that for a " wilful violation of the rules and regulations made by the Commissioners, Railroad companies are liable for exemplary damages." It would be the strangest of anomalies if a railroad corpor-

ation is liable to exemplary damages for the wilful viola-
tion of the regulations of the railroad commission but is
not thus liable for the wilful and wanton violation of the
regulations prescribed by the legislative power which
created them both.    And we should have this further
anomaly in the law :    A telegraphic dispatch announcing
the critical illness of a near relative is sent.    If not deliv-
ered promptly the sendee, as is properly held by numer-
ous decisions of this Court, is entitled to exemplary damages
though he has suffered no personal injury nor has any
indignity been inflicted upon him.    *Young* v. *Telegraph
Co.*, 107 N. C., 370 ;    *Thompson* v. *Telegraph Co.*, *Ibid,*
449 ; *Sherrill* v. *Telegraph Co.*, 116 N. C., 654.    The
reason is that, being put upon notice by the tenor of the
dispatch, it is *wanton and wilful* violation of the duties
for which it was incorporated for the company to fail to
deliver the message promptly, and the highest reasons of
public policy require that exemplary damages should be
imposed.    Now, suppose the dispatch is delivered and the
sendee starts for his home, but the railroad corporation
finding that it can send a larger number of passengers to
another point, stops its car—as in the present case they
stopped it because it was cheaper to send a broken piece
of machinery to Norfolk to repair than to keep necessary
repair shops or another engine—and, by this wilful and
wanton violation of its statutory duties to furnish sufficient
transportation, the recipient of the telegram does not
reach the bedside of his dying wife, would it not be an
anomaly that, for a wilful and wanton violation of its duty
to deliver the telegram promptly, the telegraph company
is liable to exemplary damages, but, for an equally wilful
and wanton violation by the railroad corporation to trans-
port the passenger according to schedule, that company is
only liable to pay the passenger's board bill during his

HANSLEY *v.* RAILROAD.

detention? In a case where the corporation failed to bring the passenger home on his round-trip ticket, as the defendant in this case failed to do, punitive damages were sustained in *Head* v. *Railroad*, 79 Ga., 358.

But it was contended on the argument that though the railroad corporation is liable for the wilful and wanton violation of its statutory duty in running its trains by a station without stopping and thus failing to take on a passenger when there happens to be a vacant seat, it is not so liable if, with full notice of more passengers waiting at a station than the cars can carry and in time to add more cars, it fails to do so. It is difficult to recognize the authority to hold that this act of wilful violation of its statutory duties and wanton disregard of the rights of the public does not subject the corporation to punitive damages while the same wilfulness and wantonness in running by a station without stopping does so subject the corporation if there happens to be a vacant seat. It is the same wilfulness and wantonness to fail to have sufficient seats when the corporation has notice in time and cars in its control as not to stop to fill the empty seat. The statute authorizes no such discrimination. It provides (*Code*, Sec. 1963) "Every railroad corporation....shall furnish *sufficient accommodation* for the transportation of *all* such passengers and property as shall within a reasonable time previous thereto be offered for transportation at the place of stopping and ....at the *usual stopping places* established for receiving and discharging passengers and freight for that train.... and shall be liable to the party aggrieved in damages for any neglect or refusal." The statute nowhere intimates any distinction whereby one wilful and wanton violation of the statute is cause for exemplary damages and that another equally wilful and wanton violation of the same statute incurs no such liability.

The reasonable and impartial rule laid down by a unanimous Court in Purcell's case is that if the breach of the statute "was mere inadvertence or negligence or was caused by an unforeseen number of passengers presenting themselves which rendered it unsafe to take a greater number aboard, and the company *could not by reasonable diligence* have increased the number of cars, then the plaintiff could only recover compensatory damages. If however....the defendant by *reasonable diligence* could have ascertained that the number of cars was insufficient and made no effort to supply the deficiency, but, regardless of its duties and of the rights of those whom it had invited to present themselves at its regular station for passage, *or* if having room for additional persons it passed without stopping, this displayed a gross and wilful disregard of the rights of the plaintiff which entitle him to recover punitive damages." This is sustained by numerous authorities in other States. *Heirn* v. *McCaughan*, 32 Miss., 1 ; *Railroad* v. *Hurst*, 36 Miss., 660 : *Silver* v. *Kent*, 60 Miss., 124 ; *Wilson* v. *Railroad*, 63 Miss., 352 ; *Railroad* v. *Sellers*, 93 Ala., 9 ; 3 Sutherland Dam., Sec. 937. It was urged on the argument that it would be difficult often to decide what state of facts would or would not constitute a wilful and wanton disregard of statutory duties. But that does not authorize a judicial repeal of the statute either in whole or in part. It must in each case be determined whether the facts proved show a "wilful and wanton disregard of statutory regulations" and if they do the jury is empowered to impose exemplary damages subject to the protective supervision of the court to prevent abuse by setting aside the verdict.

But it was further argued before us that, while a railroad corporation is by statute liable for "a wilful violation" of the regulations of the railroad commission, it is not lia-

ble for "a wilful and wanton violation of *statutory* regulations." And, hence, when a train with several vacant seats passes its regular station without taking on a passenger waiting there, the liability is only because of the *indignity* offered the intending passenger. But it will be noted that this is a mere substitution of words. The sole indignity offered him is the wilful and wanton disregard of his rights as guaranteed by the statute (*Code*, Section 1963) that "sufficient accommodation for transportation shall be afforded at the usual stopping places" and the same *indignity* is equally offered him by the violation of the same statute if the company knows in reasonable time that the number of cars are insufficient and can supply them and fails to do so, running by without stopping though with crowded cars because it chose not to supply enough. The duty to furnish sufficient cars is clearly stated in *Branch v. Railroad*, 77 N. C., 347, independently of the express requirement of the statute, *Code*, Section 1963—above quoted.

In the present case the learned judge charged the jury, in accordance with the ruling of this Court, that if the defendant was guilty of wilful and gross negligence the plaintiff could recover, otherwise not, and further that, if the accident occurred, which they could not have, in the ordinary course of their business, foreseen and provided for, this would not be wilful negligence, but "if the character of the negligence was such as to satisfy the jury that the defendant did not care or was indifferent as to whether they had the train there (to bring the passengers home) it would be wilful negligence." It was in evidence that when the plaintiff, who held a return ticket, applied for transportation, the official in charge gave himself no concern whatever, made no effort to have the plaintiff brought home, and refused the use of the hand-car. His Honor,

after stating correctly and more fully what facts would constitute wilful negligence and what would not, instructed the jury that only in the event they found wilful negligence could the plaintiff recover. There was ample evidence to submit to the jury the inquiry whether or not there was wilful negligence. Both authority and reason sustain the proposition that "the liability of a railroad company for exemplary damages cannot be made to depend on the ability of the corporation to earn enough money to keep its road in such condition as to be operated with safety." *Railroad* v. *Johnson*, 75 Texas, 158, 162; *Taylor* v. *Railroad*, 48 N. H., 304, 317. If the company is unwilling or unable to furnish money to run its trains according to the statutory requirement it should cease to hold itself out to the public as a common carrier.

The jury having found that there was a wilful violation by the defendant of its statutory duty to transport the plaintiff and a wanton disregard of the plaintiff's rights in that respect, it is not the province of this appellate court to review the facts and disturb the verdict.

The principle involved is one of universal interest. It is nothing less, when reduced to its last analysis, than whether these corporations primarily created for the convenience and advantage of the public with the incidental benefit of profit to their owners are subject to exemplary damages when they *wilfully and wantonly* violate the statutes passed for their regulation by the power which created them. If they are not, then clearly and unmistakably the public are in the power and at the mercy of the arbitrary will of corporations which daily aggregating into larger and larger masses are powerful beyond any control other than the law. And if they possess the power of violating *wilfully and wantonly* the statutory regulations prescribed for the protection of the public, without fear of

117—37

punishment by the imposition of exemplary damages at the hands of a jury, then the law-making power in creating them is like the magician in the Eastern story evoking a spirit which mastered and destroyed him. The rights of the people are too much at stake in maintaining the principle that railroad corporations are liable to exemplary damages for the " wilful violation " of statutes passed for their regulation, equally with similar violations of the regulations of the railroad commission, for any . denial or limitation of such principles to pass unnoticed.