COLEMAN v. RAILROAD.

(Filed May 9, 1905.)

*Railroads—Schedule of Trains—Rights of Passenger—Misinformation by Agent—Burden of Proof—Damages—Impeachment of Witness—Evidence.*

1.  Under section 1963 of the Code, the printed schedule of trains is an offer, which is accepted by a person when he asks for a ticket, and he has a right to be transported by the first train stopping at his destination.

2.  If a train arrives after its schedule time, or misses connection, or delays a passenger at his destination after the schedule time, unless the delay is caused by no fault of the carrier, the passenger has a right to recover compensation for the loss of time and actual expenses.

3.  Where the plaintiff missed his train, by reason of incorrect information furnished by the ticket agent at the time he applied for a ticket, an announcement made later in the waiting room did not cure the misinformation given to the plaintiff, unless the correction was brought to his knowledge.

4.  Where a ticket agent of the defendant gave misinformation which misled the plaintiff and refused to sell him a ticket, the burden was upon the defendant to show that he gave the plaintiff correct information in time to enable him to take the train.

5. The plaintiff who missed his train by misdirection of the defendant's agent and his refusal to sell him a ticket, can recover for any injury proximately caused by being put out of the station into the cold weather, while waiting for the next train.

6. It is competent to impeach the plaintiff, to show by him that he had been convicted of forcible trespass.

7. The plaintiff's denial that he had been charged with larceny is conclusive, and it is incompetent to introduce contradictory evidence.

ACTION by Chas. Coleman against the Southern Railway Company, heard by *Judge O. H. Allen* and a jury, at the January Term, 1905, of MECKLENBURG Superior Court. From a judgment of nonsuit, the plaintiff appealed.

*A. B. Justice* for the plaintiff.
*W. B. Rodman* for the defendant.

CLARK, C. J.   On February 5, 1905, about 8:30 a. m., the plaintiff went to the defendant's station in Concord to take the south bound train for Harrisburg.   Two south bound trains were, according to schedule, expected soon thereafter, the first (which had been due since 7:23), No. 33, was a through train which did not stop at Harrisburg, the other, No. 11, due at 9:10, was a local passenger train which did stop there.   The plaintiff went to the ticket window and asked for a ticket; the agent told him the through train was ahead and he could not sell him a ticket on the local train till the through train had passed.   The plaintiff then went out and looked at the bulletin board and found that the local train would come in first.   He went back and told the agent, who replied that the bulletin was wrong and that the through train had gotten ahead.   The agent testified that "when I saw No. 11 come in first I stepped out of my office door and 'hollered' out that No. 11, the local train, was ahead, and stepped back in my office and got my

mail to put in the baggage car. There wasn't any one at the ticket window." He further said that the plaintiff was not present at that time. He does not testify that he made any effort to find the plaintiff and correct his refusal to sell him a ticket by the train first arriving. The plaintiff testified that he went out on the platform and was there when the train arrived; that the agent was then in three feet of him but gave him no information that this was the local train, and relying upon the twice given information that this was the through train and having no ticket, he did not try to get aboard; but he and the agent both say that as soon as the first train left the plaintiff went to the agent again to buy a ticket, when he was told that the local train had passed. He was told that he could get a ticket to Harrisburg by the local freight train, but he could not learn what time it would leave, but it did leave about 12:30. About 10:30 the agent closed the station and put the plaintiff out (though he asked to be allowed to remain) and he stood around in the cold on his crutch and cane till the 12:30 train left, on which the plaintiff went to Harrisburg. The plaintiff's positive testimony that he was thus put out is not denied by the defendant's witnesses, for Kimball swore that "he did not remember the occurrence of that morning" and was not ticket agent at that time and "did not know anything about the facts that Coleman had testified to, of his own knowledge," and Carson, when asked if he put Coleman out, replied, "not that I remember," adding, he thought he would have recollected it. He also says that he closed the office and left after the 10:30 train passed going north and that the plaintiff applied to him again for a ticket after No. 11 had passed. He bought his ticket before the office was closed. Neither of these witnesses could recall the weather that day. Other witnesses for the defendant, on cross examination, corroborated the plaintiff as to his being on crutches and complaining at the time of the refusal to sell

138——23

him a ticket. There is evidence that he had a burn on his leg, necessitating the use of the crutch and cane, in which sore he took cold by reason of being turned out of the station and suffered serious injury from his exposure and great pain for many weeks.

It goes without saying that this is a case of grave disregard of the rights of one of the traveling public. The defendant is not a person or private corporation which can do business when and with whom it pleases, but it is in the enjoyment of a very profitable public franchise which it can only exercise by reason of a grant from the public of the right of eminent domain and subject to control of its rates and management by the State and even to a repeal of its franchises at the will of the Legislature. The Constitution, Article VIII., Section 1. The Code, section 1963, provides that "every railroad corporation shall start and run their cars for the transportation of passengers and property at regular times to be fixed by public notice and shall furnish sufficient accommodation for the transportation of all such passengers and property as shall, within a reasonable time previous thereto be offered for transportation  *  *  *  and shall be liable to the party aggrieved in an action for damages for any neglect or refusal."

It was not optional with the defendant whether, and when it should transport the plaintiff, like a merchant selling goods. The printed schedule is an offer which was accepted by the plaintiff when he asked for a ticket, and he had a legal right to be transported by the first train stopping at Harrisburg. If the train arrives after schedule time or misses connection, or delivers a passenger at his destination after the schedule time, unless the delay is caused by no fault of the carrier, the passenger has a right to recover compensation for his loss of time and actual expenses. This has been often held. *Purcell v. Railroad*, 108 N. C., 417, cited and affirmed in *Hansley v. Railroad*, 117 N. C., 570, 571. "He

can recover loss of time and expenses, such as hotel bills, incurred in waiting for the other train." 2. Sedg. Dam., sec. 862; 2 Harris Dam., sec. 545; *Railroad v. Carr,* 71 Md., 135; *Yonge v. S. S. Co.,* 1 Cal., 353; Bishop Non-Cont. Law, sec. 74, 1059. Indeed "the mere inconvenience" is ground for damage. *Railroad v. Carr; supra,* and cases there cited. In *Railroad v. Birney,* 71 Ill., 391; *Heirn v. McCoughan,* 32 Miss., 17, and *Purcell v. Railroad, supra,* the plaintiff recovered damages because the train, scheduled to stop at that station, ran by without stopping. In *Sears v. Railroad,* 94 Mass., (12 Allen) 433; *Railroad v. Bonaud,* 58 Ga., 180, and *Denton v. Railroad,* 5 Ellis & B., 860, the plaintiff recovered damages because he went to the station to take a train scheduled to leave at that hour, but which did not go out. There are many similar cases. 5 Am. & Eng. Enc. (2nd Ed.), 585.

In the present case, the plaintiff twice applied for a ticket by that train and was refused. We are not called upon to question the rule that tickets should be sold only for the next train. Here, the agent refused to sell the plaintiff a ticket for the "next train." It is immaterial to him whether this was the negligence and indifference of this particular agent or whether he was misled by the negligence of some other agent of the defendant. The plaintiff had a right to rely upon his representation. *Railroad v. Atchison,* 47 Ark., 74; 1 Fetter on Passengers, sec. 305.

There is no evidence that the agent tried to seek out the plaintiff and correct the error, nor that the plaintiff heard the announcement (if made) in the waiting room. Indeed the announcement, according to the agent's testimony, was only made after he saw the train come in, and he did not go back to the ticket window, and there was no opportunity for the plaintiff to get a ticket if he had been present.

The testimony of the defendant is that the plaintiff went off towards Cannon's Mill, but this apparently was after he was refused a ticket by the second train. Both the plaintiff

and the agent ·concur that immediately after No. 11 left, the plaintiff a third time applied for a ticket. The agent testified that the plaintiff was not present when he made his hurried announcement that No. 11 had arrived. There was no reason he should be, after the agent's statement that he could not get a ticket "till the next train had passed" and it is admitted that immediately after the first train passed he did come up and ask for a ticket "by the next train."

The charge of the court that "if afterwards the agent made the announcement (that No. 11 had arrived) in the station where passengers had a right to be at that time and the plaintiff either did not hear him or was absent, and did not apply for a ticket accordingly after his announcement was made, then the defendant could not be guilty of negligence," was clearly error. The plaintiff was not required to be in the waiting room, since he could not get a ticket till after the first train passed, and an announcement then could not cure the misinformation given to the plaintiff unless the correction was brought to his knowledge. The agent's testimony is that it was not, for he says the plaintiff was not there.

The court further erred in telling the jury that the burden upon this point was upon the plaintiff. He charged immediately after the above quotation: "So that it becomes important, in the beginning, to ascertain how it was. The burden is upon the plaintiff, the burden is upon him to show this by the greater weight of the evidence." The agent having upon his own testimony given the misinformation which misled the plaintiff, and refused to sell him a ticket, the burden was upon the defendant to show that he gave to the plaintiff correct information in time to enable him to take the train.

Further, when the agent had knowledge that the plaintiff had thus missed his train, the plaintiff had a right to remain in the station and be kept comfortable till the next train left.

It was brutality, against the plaintiff's protest, to turn him out in the cold with a recent wound, when the agent saw he was leaning on his crutch and cane and knew that by his misinformation the plaintiff had been left there, more especially, if it is true, as the plaintiff testified, that the freight depot was also closed, and the doors of the passenger coach on the local freight-train were locked, and not knowing when it would leave, he could not go on his crutch and cane back to the town, which is some distance off, for shelter. For such tort he is entitled to reasonable and just damages for any injury of which such conduct was the proximate cause, and the plaintiff is entitled upon the defendant's own testimony to have this inquired of by a jury.

The plaintiff may be an humble individual and the damages may or may not turn out to be slight. But in the history of English law, many important rights have been declared in similar instances of obscure complainants, and where the wrong was not of great note by reason of its effect in that particular case.

For this disregard of the right of the plaintiff to be transported by the first train, and not to be turned out into the inclement weather from the defendant's waiting room after having been thus misled by its agent into losing his train, he has no remedy but in the courts of his country. It is the good fortune of the defendant that its liability for the misconduct of its agent in turning out a passenger entitled to its protection, should be declared in a case where the consequences of such misconduct did not prove more serious, as in many cases they might be, as where the delayed passengers are infirm, feeble, or women and children. The traveling public have an interest in knowing clearly what are their rights when detained beyond schedule time by delays of the train, and they have a right to know that their comfort while waiting for the next train is protected by the law.

"Where a station building has been erected by a railroad

company to which passengers are invited while waiting for trains, a common law duty rests on the company to provide reasonable accommodations for those who accept its invitation." I Fetter, Carriers of Passengers, sec. 250. This court while holding that thirty minutes before the time scheduled for the arrival of a train might be a reasonable time to open a waiting room, added that the case would be different with through passengers and delayed trains. *Phillips v. Railroad,* 124 N. C., 123. It is neglect of duty to allow the waiting-room to become uncomfortably cold (2 Wood on Railroads, 1165) or to fail to keep it lighted. Bishop Non-Contract Law, sec. 1086. In *Railroad v. Cornelius,* 10 Texas Civ. App., 125, where the plaintiff was detained at the station by the train being delayed, the court held that she could recover for injury to her health caused by the fire being permitted to go out. The railroad company is liable to passengers waiting for a train for injuries sustained from failure to keep its waiting room comfortably heated. *Boothly v. Railroad,* 66 N. H., 342. For a stronger reason the plaintiff who missed his train by misdirection of the defendant's agent and his refusal to sell him the ticket can recover for any injury proximately caused by being put out of the station, into the cold weather, while waiting for the next train, and possibly for the indignity of such treatment, under these circumstances, also.

The plaintiff was not afforded an opportunity to have his testimony either credited or "discredited" by the jury, for when the judge told them that if, after refusing to sell the plaintiff a ticket, the defendant's agent afterwards announced the arrival of the train at the station and "the plaintiff either did not hear him or was absent" (neither of which the plaintiff denied) and accordingly did not buy a ticket, that "the defendant could not be guilty of negligence," he effectually withdrew the case from the jury. This is the chief error, that the jury was not allowed to pass upon the controversy, by reason of the erroneous instruction.

COLEMAN *v.* RAILROAD.

It was competent, to impeach the plaintiff, to show by him that he had been convicted of forcible trespass. His denial that he had been charged with larceny was conclusive, and it was incompetent to introduce contradictory evidence. The defendant's brief opens with reference to the plaintiff having received the burn on his leg while drinking. This could hardly have been competent to impeach his veracity, and still less was it competent (as the prominence given it seems to indicate) as a defense of the wrong done him by the defendant in turning him out, regardless of the weather, to hobble around on his crutch and cane. The State had punished him for his violation of law, and possibly the burn was punishment enough for the drinking. Certainly the defendant had no jurisdiction to add further punishment by exposure to the weather. He was not outlawed. He had offered and paid his money for transportation over the defendant's road and was entitled under the law to as good treatment at its hands as any one else.

Error.

WALKER, J., concurring in result: Plaintiff went to the station of defendant at Concord intending to take the south bound local train for Harrisburg. He applied to the agent for a ticket when he was told that he could not get one at that time, as tickets would not be sold for the local train (No. 11) until the fast train (No. 33), which would arrive first, had passed. Plaintiff called the agent's attention to the time of arrival of the two trains as stated on the bulletin board, and was told that the time of arrival was not correctly stated there and that the fast train would come in first. The agent testified that when he saw No. 11 coming he announced the fact in the waiting room, but the plaintiff was not there at the time, and there was testimony introduced by the defendant which tended to show that plaintiff left the

station after he had asked for a ticket and failed to get one and did not return until after both trains had passed. Testimony was introduced by the plaintiff which tended to show that he did not hear the announcement of the agent, if it was made; that he was on the platform when the local train arrived, but supposed it was the fast train as he had been told it would be the first train to come, and that the agent was within three feet of him and gave him no information. That he went back to the office when the train had left the station and asked for a ticket, when he was told that the local passenger train had passed and that he could only get a ticket for Harrisburg on the local freight train, but the agent could not tell him when it would leave. It did not leave until 12:30 o'clock. The agent put the plaintiff out of the building and locked the door. Plaintiff's leg was sore from a burn and he had to use a crutch and cane in walking. The day was very cold and by reason of the exposure while waiting at the station for the freight train, the sore on plaintiff's leg became inflamed and he suffered great pain and inconvenience for many weeks. Testimony introduced by the defendant tended to contradict plaintiff's version of the facts. Verdict and judgment for defendant.

There was much testimony introduced by the respective parties, but I have stated only so much thereof as is deemed necessary to present the question upon which in my opinion the case should turn, at least in this appeal. The charge of the court, in an important particular, was erroneous, for that it must have left the jury in doubt as to the burden of proof and, more than this, it was calculated to impress them with the belief that, in a certain phase of the case, the burden was upon the plaintiff whereas in law it rested upon the defendant. That part of the charge to which reference is made was substantially as follows:

1. Now upon the first issue, 'was the plaintiff injured by default and negligence of defendant as alleged in the com-

plaint,' that involves the question as to whether the defendant through its agent was guilty of negligence in its dealings with the plaintiff.    2. If the jury find from the evidence that the defendant failed to inform the plaintiff as to just when the train would arrive at Concord, and in consequence thereof it refused to sell him a ticket, and thereby, as a reasonable consequence, made it necessary for him to remain at or near the depot at Concord several hours, until the departure of another train, if that is found by the jury by the greater weight of the evidence, then they will answer the first issue 'yes.'    3. On the contrary if the jury find that the defendant's agent gave the plaintiff the wrong information as to how the trains would arrive, that is to say, if he first informed him that the trains would arrive at Concord according to the regular arrangement—the fast train first and the local train coming about ten minutes afterwards—and that that was the way in which they would arrive, and that afterwards he made the announcement at the depot where the passengers had the right to be at that time, that the trains would not come in that order on that day and that the plaintiff either did not hear him or was absent, and did not apply for a ticket accordingly after this announcement was made, then the defendant could not be guilty of negligence, so that it becomes important right in the beginning to ascertain how that was.    The burden is upon the plaintiff Charles Coleman; the burden is upon him to show this by the greater weight of the evidence.

It is apparent from the third paragraph of the instructions that there are certain facts therein recited which the defendant was required to prove, and as to them therefore the burden of proof rested upon it.    The burden was surely not upon the plaintiff to establish all the facts stated in the second branch of the charge as above set forth.    It was incumbent on the plaintiff, it is true, to satisfy the jury by the greater weight of the evidence that he had been injured as a

result of the defendant's negligence, but when he had shown that the agent had made a mistake and given him wrong information as to the time of the arrival of the two trains, the defendant was then required to show any facts which would exonerate it from liability for this act of negligence on the part of its agent, and the error consists in the failure so to present the case to the jury that they could understand, with reasonable certainty at least, how to apply the rule of law as to the burden of proof in weighing the evidence.

The case was not settled by the judge who tried it, and it may be that through inadvertence, sometimes unavoidable, the remarks of the court upon the burden of proof are not properly placed, or perhaps not correctly stated, in the charge as set out in the case, but, as it now appears, the jury must at least have been left in doubt as to where the burden of proof rested. In a case like this one, a charge which requires the plaintiff to carry a greater burden than the law imposes upon him may have seriously prejudiced him in the trial of his cause, and indeed may have turned the scales against him.

When the court charged that the "burden is upon the plaintiff to show this by the greater weight of the evidence" it should in some way have indicated to the jury to which branch of the charge it referred, and should have stated how the plaintiff in respect to the issue was affected by the rule with regard to the burden of proof. It may be that the jury did misunderstand the charge; at least it does not appear to us that they did not. For this error I think there should be another trial.

If the plaintiff, after being told that he could not buy a ticket until the fast train had passed, left the premises of the defendant before No. 11 arrived and went to the Cannon Mill or elsewhere and did not return until after both No. 11 and the fast train had passed, it seems to me that he cannot recover, as by his conduct he lost the rights of a passenger

(*Quantz v. Railroad,* 137 N. C., 136); and the agent was not bound to look for him beyond the company's yard limits in order to correct any mistake he had made as to the order in which the trains would pass.   But whether the plaintiff so acted as to deprive himself of the rights of a passenger was a question peculiarly within the province of the jury to decide upon all the evidence under proper instructions from the court.   The testimony is apparently conflicting on this point, though it does not clearly appear that the witness, Kress, and the witness, Ritch, saw the plaintiff going towards the Cannon Mill before No. 11 had passed.   As the plaintiff returned to the office and asked for a ticket and was told that his train (No. 11) had gone it would appear that the defendant's witness saw him leaving the yard after No. 11 had passed and before No. 33 arrived.   This may be made plain at the next trial, when the duty of the defendant towards the plaintiff, after he had been misled by the agent, may be more clearly defined by the court.

BROWN, J., concurring in result:   This case appears to me to have been fairly presented to the jury and I can find no error which I think is of sufficient importance to warrant a new trial.   But a majority of my brethren thought that the judge below inadvertently misled the jury upon the burden of proof as pointed out in the opinion, and for such reason that there should be another trial.   On that ground I am willing to yield my judgment to theirs.

The opinion of the court seems to assume as a fact that the plaintiff was ruthlessly and brutally turned out of the waiting room about nine o'clock a. m., into inclement weather.   It is well to observe that this was denied by Kimball, the agent, and Carson, the ticket seller.

The defendant offered evidence tending to show that the plaintiff was not at the station when the local train came, and was not there when the waiting room was closed, and made no request to be permitted to remain in it.   Further, the de-

COLEMAN *v.* RAILROAD.

fendant offered evidence tending to prove that, before either train came, the plaintiff was seen going in the direction of the Cannon Mill, and that after both trains had passed the plaintiff was seen returning from the same direction. The tendency of the cross examination was to show that the plaintiff had been detained only two hours; that the weather was not so very inclement, and to show that the plaintiff's estimate of damage was exaggerated.

It also appeared from the plaintiff's own admissions, as affecting his veracity and credibility as a witness, that he was a bad character, had been convicted of crime, had been indicted for larceny and plead guilty to a forcible trespass, had been sentenced twice for six months each to a chain gang, and had burned his leg by getting drunk and lying down before the fire.

The jury appears to have discredited the plaintiff's own testimony and decided the issue in favor of the defendant.

In view of the evidence, I cannot agree that the plaintiff, upon the defendant's own evidence, is entitled to recover substantial or punitive damages. Although the plaintiff may be an "humble individual," he is nevertheless required to establish his allegations to the satisfaction of a jury.