*JAMES W. GRANT, Adm'r, v. JOSEPH J. BELL.

*Pleading—Issues—Account—Executors and Administrators— Parties.*

1. The pleadings should present the main facts of a case—those upon which the right of action, or of defence, depends, and which are indispensable thereto. And the court must not submit to the jury such issues as are directed to the mere details of evidence.

*SMITH, C. J., having been of counsel, did not sit on the hearing of this case.

2. Where the main issue is as to the fraudulent procurement of a settlement between parties, it is not error to refuse to submit an issue relating to the insolvency of one of them and the payment of money to him—this being merely a circumstance bearing on the main issue—as for instance, the acceptance by the executor in this case of his own insolvent paper for debts due the estate, is some evidence of fraud, and proper for the jury to consider in making up their verdict upon the main issue.

3. In an action for an account, where defendant pleads *quod plene computent*, he must aver that there has been an "account stated," and that the same is just and true; and where a receipt is given for the amount ascertained to be due, it operates a bar to an action for another account touching the same matters.

4. An executor who pays his private debt out of assets of his testator commits a *devastavit*, and the creditor of the executor who knowingly accepts the same, is guilty of collusion, (whether he believes the executor to be solvent or not) and is liable to an action for the amount of the assets so misapplied.

5. An administrator *d. b. n., c. t. a.* is the representative of the testator, and the proper party plaintiff in an action to recover the assets of the estate.

(*Jenkins* v. *Conley*, 70 N. C., 353; *Albright* v. *Mitchell*, *Ib.*, 445; *Costin* v. *Baxter*, 6 Ired. Eq., 197; *Harrison* v. *Bradley*, 5 Ired. Eq., 136; *Mebane* v. *Mebane*, 1 Ired. Eq., 403, cited and approved.)

CIVIL ACTION for account and settlement, tried at Spring Term, 1880, of NORTHAMPTON Superior Court, before *Gudger, J.*

In 1841 one William B. Lockhart died, leaving a last will, whereof he appointed as executors one Gray and the defendant, who had intermarried with one of his daughters, she, however, being then dead.

By said will the testator devised a certain tract of land known as the "Gee tract," to his widow, Sarah Lockhart, requesting her however to permit the defendant to occupy it until he should contract another marriage, and thereafter to cultivate it for the benefit of William T. Bell, who was the infant son of the defendant and grandson of the testator.

By other clauses of his will he devised and bequeathed to

the defendant other lands, and several slaves and stock, &c., to be his until he should marry again, and upon that event to be the property of his said son William T.

Sarah Lockhart, the widow of the testator, died in April, 1855, leaving a will in which she devised the said "Gee tract" of land to her grandson, the said William T., and bequeathed to him several other slaves, and immediately thereafter the defendant became the guardian of his said son, and took his estate into his keeping and management.

The defendant married a second wife in August, 1844, but continued to have the use of the "Gee tract" and the other property given him under the will of the testator, William B. Lockhart, until his son arrived at age.

After his arrival at age, he and the defendant formed an agricultural partnership for the cultivation of the "Gee tract" of land and an adjoining place known as the "Rex tract," and the defendant afterwards contracted with him for the purchase of a part of the "Rex tract."

The defendant and his son attempted to have a settlement of their accounts, but in consequence of the latter's ill-health it was not effected, and in 1863 the son died, leaving a will in which he bequeathed to an uncle, one B. F. Lockhart, whom he also appointed his executor, two-thirds of his whole estate, and to one Joseph G. Lockhart the residue—the defendant being still liable to account, by reason of the premises as trustee, partner and guardian.

In 1864, B. F. Lockhart, as executor of said William T., filed a bill in equity against the defendant for an account and settlement of all their matters, when it was referred to the then clerk and master to take and state the account, who made a report ascertaining the amount due from the defendant in his several capacities—the amount thus ascertained the plaintiff insists was about $20,000, whereas the defendant insists that it was about $12,000.

This suit gave rise to great bitterness of feeling between

the parties to it, and was conducted with much acrimony on their part—the said executor having for his attorney the late Thomas Bragg, and the defendant being represented by Matt. W. Ransom and David A. Barnes.

Through the intervention of their respective attorneys, the parties were brought together and an adjustment effected, in which the executor agreed to take a decree of $12,077.34, and to accept in part discharge therefrom some notes, which he, as an individual, was owing to the defendant, and accordingly this arrangement was carried out on the 25th day of September, 1868, the defendant paying the executor some money, and delivering up the notes on him agreed to be taken, and the latter giving him a receipt in full of all demands.

The estate of the said William T. Bell, the testator of said B. F. Lockhart, was indebted to parties who took judgment against his executor, which judgments remain unpaid, and in January 1875, his letters were revoked, and letters of administration *de bonis non, cum testamento annexo*, upon the estate of the said William T. Bell, have since been granted to the plaintiff.

The acquittance given by the executor, Lockhart, to defendant at the time of their adjustment, is as follows:

"Received of Joseph J. Bell the sum of nine thousand, two hundred and fifty dollars in full payment, satisfaction and discharge of a decree rendered against him in favor of B. F. Lockhart, executor of W. T. Bell, deceased, in superior court of Northampton county, and also received the further sum of two thousand, eight hundred and twenty-seven $\frac{34}{100}$ dollars, good bonds, in full payment, satisfaction and discharge of that part of the said decree in reference to 58¾ acres of land passed by the said decree to the said Joseph J. Bell; and I, the said Benjamin F. Lockhart, executor as aforesaid, do hereby acquit and fully discharge and release the said Jos. J. Bell in full of all claims whatsoever, on account of the

said Wm. T. Bell, and the said estate and decree. The clerk is authorized to file this receipt with the papers. 25th November, 1868."

(Signed)            " B. F. LOCKHART, Ex. of W. T. Bell.

Witness : M. W. RANSOM.

No such decree as the one referred to in that instrument can be found on the files of the court.

W. H. Gray, who was surety on the bond of Lockhart, as the personal representative of W. T. Bell, was also his surety on one of the bonds, which the defendant held on the said Lockhart, and which was taken, as has been said, by him in part satisfaction of the alleged decree, and he was present at the adjustment made between them, and gave his approval to it.

In his complaint the plaintiff alleges that at the time of making the settlement with the defendant, the executor, Lockhart, was in very straightened if not insolvent circumstances, that his home had been sold to one Long, who had, however, given him an opportunity to redeem it, and he had been.sued by some of his creditors, and was threatened with a suit by the defendant, who living in Virginia could sue in the federal court where a right to homestead as against debts contracted before 1868 was not recognized. That taking advantage of his distressed condition, the defendant fraudulently prevailed upon him to compromise his suit and to accept greatly less than was due the estate of his testator, as well as to receive his own private debts in part discharge thereof, and he prays that the receipt given in consequence of a settlement, so covinously procured, should be declared void, and that the defendant may be now required to account fairly for all the several matters involved in the premises.

On the other hand the defendant alleges that it was a fair and just settlement of all he owed, proposed and urged by Mr. Bragg, as the counsel for the executor, and conducted

by Messrs. Ransom and Barnes on the part of the defend-
ant. That defendant did not then believe the executor to
be insolvent, but whether so or not, there was no effort to
intimidate him and no duress put upon him. That it was
no compromise of the amount due from him to the estate of
his son, but a payment of the whole sum found to be due
after a careful investigation and full proofs, as to every
matter connected with the transaction between his son and
himself.

On the trial in the court below the plaintiff introduced
as evidence the records of many judgments taken against
B. F. Lockhart, and of actions still pending against him—
all being for debts contracted prior to 1868, and amounting
in the aggregate to some $17,000, and the sheriff's return
of *nulla bona* to the executions issued upon the judgments.

To some of these debts the defendant was bound as the
surety of the said Lockhart.

He also introduced as a witness T. W. Mason, who testi-
fied that in a conversation with him, the defendant said that
he had paid Lockhart, in his settlement with him as execu-
tor, only some $10,000 or $12,000, and this he had paid
partly in bonds he held upon him. This witness also testi-
fied that the feeling between the parties anterior to the set-
tlement in 1868, was exceedingly bitter, but that after that
time their relations were cordial and friendly, and that he
heard the defendant say, soon thereafter, that he intended
to purchase a tract of land then about to be sold, for Lock-
hart's family, and that his purpose was to befriend him.

The defendant introduced as witness Messrs. Ransom and
Barnes, who had been of counsel for him in the matter, to
whom it had been referred to take the account between the
parties to the action of Lockhart against the defendant, had
made two reports, one based on the rents and hires of the
property, and the other upon the average profits derived
therefrom, and that, just upon the eve of going to trial, Mr.

Bragg, of counsel for Lockhart, approached them, with the suggestion that the matter should be settled, and a proposition to settle according to what was known as the " rent and hire account." The defendant insisted that the hires were too high, and proposed then and there to furnish proof of that fact; but after further consultation, they settled according to said account, except that an abatement of $1,000 was made on account of the alleged extravagance of the charges, and it being further stipulated that the amount to be paid should be accepted in good bonds in lieu of cash. Accordingly the settlement took place on this footing.

Amongst the bonds agreed to be taken were some which the defendant had upon Lockhart—some with, and some without surety. Also one on N. M. Long, which Lockhart afterwards used in paying a debt he owed to said Long.

The acquittance, before set out, was then prepared by the witness, Mr. Ransom, and signed by Lockhart; and Mr. Bragg, at the same time, and at the same table, drew the decree to be filed in the cause—the presiding judge having delayed the adjournment of the court in order to sign it.

Mr. Ransom also testified that in the settlement each party stood upon his own rights, and insisted upon receiving all that was due him; also, that they were very hostile towards each other, but became friendly at the time of the adjustment of the suit, and remained so afterwards.

Two issues were submitted to the jury:

1. Has the defendant settled in full with B. F. Lockhart, executor of William T. Bell, all demands of said Bell against him, and been released from his liability therefor?

2. Was said release obtained by fraud on the part of the defendant?

To the first they responded in the affirmative, and to the latter in the negative.

Judgment was rendered in favor of the defendant, from

which the plaintiff appealed, (his exceptions being set out in the opinion of the court.)

*Messrs. R. B. Peebles* and *Thos. N. Hill,* for plaintiff.

*Messrs. Mullen & Moore, J. B. Batchelor* and *Day & Zollicoffer,* for defendant.

RUFFIN, J., after stating the above. As disclosed in the record, the plaintiff's first two exceptions relate to the admission of certain evidence, but as his counsel failed to advert to the subject in their argument here, we infer their purpose to abandon them, and therefore content ourselves with saying that in our opinion they were properly abandoned.

In lieu of the issues submitted and passed upon by the jury, the plaintiff proposed the following :

1. Was B. F. Lockhart insolvent on the 25th day of November, 1862 ? (that being the day on which he executed the receipt.)

2. How much money did the defendant then pay to said Lockhart as executor of W. T. Bell ?

These, His Honor deemed unnecessary, and rejected, and his action in this particular is the subject of the plaintiff's third and fourth exceptions.

Strictly speaking, the pleadings should present only the *issuable facts* of the cause—that is, those facts upon which the right of action or of defence ultimately depends. But parties oftentimes, and sometimes properly, in order to give point to their main matters, introduce matters merely evidentiary, that is, such as need only be proved at the trial in support of the essential issuable facts.

Frequently it is difficult to distinguish between the two classes of facts. But still, it is the duty of the court to do so, and to submit only such issues as are directed, not to the mere details of evidence, but to those main conclusions of

fact that are indispensable to the right of action, or of defence—or else, there will be no such thing left to the juries of the country as a general verdict, but all their findings must assume the form of special verdicts, ascertaining only "the dry facts" of the case, and leaving their legal effect to be declared by the court.

Doubtless His Honor under the provisions of C. C. P., § 233, might in his discretion have required the jury to find the facts, and reserved to himself the right to pronounce the judgment of the law. But this was not incumbent upon him, and as he deemed it best to submit such issues as were compounded of both law and fact, and left their decision to the jury under such instructions as he might give them, there was no room for either party to complain—since the statute expressly clothes him with that discretion.

The main issuable fact apon which the plaintiff's right of action in this case depends, is the fraudulent procurement of the settlement and acquittance by the defendant. This the latter denies, and so it becomes the conclusive essential fact in the cause, and the insolvency of the executor and the non-payment to him of any money, while material and important circumstances, are but matters or details of evidence, bearing upon it. Suppose both those facts to be established, as contended for the plaintiff, it would still leave the main and more comprehensive issue as to the fraud, undecided. The proposed issues were, therefore, too narrow, and failed to reach the whole merits of the controversy, and were properly rejected by the court. *Jenkins* v. *Conley,* 70 N. C., 353; *Albright* v. *Mitchell, Ib.,* 445.

In this fifth and sixth exceptions, the plaintiff complains of the issues actually submitted, upon the ground that they are not such as are raised by the answer—the allegation of the settlement therein contained being as he says insufficient to raise the issue of *in simul computassent,* because no ac-

count is therein set out, accompanied by an oath as to its being just and true.

The authorities all say, that whenever to a bill for an account the defendant pleads *quod plene computent,* he must aver that there has been an *account stated* between the plaintiff and himself, and that as stated it is just and true; and when practicable, it is proper that a copy of the account so settled should be annexed to the answer.

As far as lies in his power, this defendant seems strictly to have complied with this requirement of the courts.

The complaint itself alleges that the action heretofore brought by Lockhart, as executor, against the defendant, embraced the very matters which are now in controversy, and further that in the progress of that action a reference had been made to the master to state the account of the defendant in his threefold capacity of guardian, trustee and partner, and a report from him presenting the account in two aspects—which report and account have been lost from the files. All this the defendant admits, and alleges that his ultimate settlement took place upon the basis of one of the accounts as reported by the master, and that as thus settled it embraced every item with which he should have been charged, and was both just and true, and its loss from the files and his inability to restate it, owing to the great lapse of time, he tenders as his excuse for not setting it out in his answer—and surely in a court of equity this must suffice.

As for the acquittance, it is not pleaded, or relied upon, as a technical *release,* operating *proprio vigore* as a discharge of the defendant, but as a written acknowledgment of satisfaction of the amount so ascertained to be due, and it cannot be necessary to cite authorities to prove that an account so stated and settled, and its satisfaction so evidenced in writing, must be a bar to an action for another account touching the same matters. Fair settlements, like other contracts, must be observed by the parties, and will be up-

held by the courts without stickling as to form.    The facts set out in *Mebane* v. *Mebane*, 1 Ire. Eq., 403, differ so immaterially with those of the present case, as to make it a direct authority for us ; and so too in *Costin* v. *Baxter*, 6 Ire. Eq., 197, and *Harrison* v. *Bradley*, 5 Ire. Eq., 136.    In each of those cases, there had been an " account settled," though not an " account stated," and a receipt given ; and it was held that it would be mischievous to allow such settlements to be disturbed after the accounting parties had, perhaps, lost or destroyed their vouchers.

Seventh exception.    The plaintiff asked that the jury should be specially instructed that, inasmuch as the burden rested on the defendant to show that a fair and true account of the several matters, now involved, had been stated between the former executor and himself, and he had failed to furnish such proof, they should find both issues, as submitted, against him.    This instruction His Honor refused to give, and in the opinion of this court, properly so.

Apart from the defendant's own allegations, his attorney, Mr. Ransom, who aided at the settlement, testified, that except as to an abatement of $1,000 in the rents and hires charged, it was made upon the basis of what was known as " the rent and hire account "—that being one form of the account so stated by the master—and that both parties were then fairly represented by counsel, and both stood upon their rights and contended at arm's length.    Without, then, invading the province of the jury, the court could not give the instruction prayed for.

Eighth.    The plaintiff prayed the court to instruct the jury that in passing upon the second issue they should not consider the characters of Messrs. Bragg, Ransom and Barnes, the attorneys of the respective parties, who aided at the settlement.    This was also properly refused by the court.    As disclosed, there is literally nothing in the case which could justify any such instructions.    No sort of prominence ap-

pears to have been claimed for those gentlemen, and no proof either way as to their reputation, or their abilities as attorneys. But the fact that both parties to the agreement were fairly represented by counsel learned in the law, is relied on as tending to show that no undue advantage was taken by one over the other—and surely it would have been to reverse the rule of every day's experience, for the court to caution the jury against the integrity and intelligence of those, by whose advice, and through whose coöperation, it had been effected.

Ninth. The plaintiff further asked that the jury should be instructed that it is *fraud in law* for an insolvent executor to take, in payment of debts due the estate, his own insolvent paper ; and therefore if they should believe that the executor, Lockhart, was insolvent, and gave the discharge relied on by the defendant, on account of the surrender and cancellation of his own notes, he was guilty of fraud, and the defendant likewise guilty of a wilful participation therein. His Honor declined thus to instruct the jury, but told them that it was some evidence of fraud, on the part of the executor, to accept his own insolvent paper in discharge of debts due the estate of his testator.

Admitting that some slight obscurity attaches to this portion of the instructions given, we still can discover no such error as in our opinion would justify us in disturbing the verdict as rendered. The plaintiff's allegations set forth the conduct of the defendant as fraudulent in two particulars: First, in taking advantage of the exposed and impoverished condition of the executer; and by use of the power of a creditor, constraining him to settle upon terms injurious to the estate, and to accept less than the amount justly owing to the same ; and secondly, in inducing the executor after the amount was thus agreed upon, to accept in payment his own private debts.

The fact that payment was thus made, either in whole or

in part, by the surrender of debts on the executor is nowhere denied in the answer. On the contrary, it seems to have been conceded throughout the whole case, and was proved by the defendant's own witness and counsel. This being so, there was no issue raised as to that branch of the alleged fraud, which needed to be passed upon by the jury; and consequently, His Honor seems to have confined his own and the jury's attention exclusively to the fraud alleged to have been practiced in procuring the settlement.

Taken in this light, the acceptance of his own notes by the executor ceased to be a matter of legal intendment, and become, as we had occasion to say with regard to his insolvency, one of the details of evidence, proper to be submitted to the jury and to be weighed by them in determining the main issue as to the fraudulent procurement of the settlement and discharge.

The tenth and last exception is taken to the refusal of the judge to grant the plaintiff judgment *non obstante veredicto.* This we think he was entitled to, not to the full extent claimed by him, but to the extent to which the defendant discharged his indebtedness to the estate of his son by the surrender of debts upon the executor.

No principle seems to be better supported by reason, or more firmly established by authority, than that the payment by an executor of his own private debt out of the assets of his testator is a clear *devastavit;* and that he, who knowingly accepts the assets in extinguishment of his private claim upon the executor, is guilty of collusion to make a *devastavit,* and will not be allowed to retain them against creditors or legatees, or those who represent them. The executor, although complete owner of the legal title of the property in his hands, is still in equity regarded as a trustee for creditors and legatees, and perfect good faith, on his part and those dealing with him, is exacted by the courts; and, as in all other cases, where a trustee has parted with the property in

breach of his trust, the *cestui que trust* may follow it into the hands of any one who has been guilty of a collusion with the executor.

It is no answer to say that he believed the executor to be solvent, and that he would replace the amount to the credit of the estate. The assets are a fund for the payment of the testator's debts and the legacies bequeathed in the will, and not the debts of the executor ; and when his private creditor, who knows his representative character and. duty, consents to accept payment out of a fund appropriated to other purposes, that circumstance is all that is needed to fix him with notice ; and the later and better doctrine is, that in such case he acts at his peril and takes upon himself the risk of the executor's right to so apply the assets, and of his ability to replace them in case of necessity. *Petric* v. *Clark*, 11 Sergt. & Rawle, 377 ; *Colt* v. *Lanier*, 9 Cowen, 320.

Objection, however, is taken that the action is improperly brought in the name of the administrator *de bonis non*, and that it can only be maintained by the defrauded legatees, or creditors, if there be such. This we do not regard as an open question. In *Colt* v. *Lanier, supra,* it is said that an administrator *de bonis non* is the full representative of the testator as to all effects not duly administered, and that he can therefore seek a discovery and account of assets in whosoever hands they may be, as long as they belong to the estate, and accordingly he was allowed to have his action against one who had taken the assets of the estate in payment of the executor's private debt. The same was held in *Dobson* v. *Simpson*, 2 Randolph, 294, and it must needs be so in this state, where it has been so long held that none but an administrator *de bonis non* can sue for a *devastavit* committed by a previous representative of the estate.

Nor can it materially alter the case that the executor in this instance was a legatee, as well. At most he was only a legatee for life with remainder to his children, if any, and if

not, then to his brother's children. But above all this, the defendant had notice that the executor was applying the assets out of the ordinary course of administration, and he participated therein, and must be taken to have dealt at his peril in this particular also, and he cannot be permitted to retain the fruits of his collusion so long as a single debt of the testator remains unpaid, or a legatee of any description, unsatisfied. ·

Of course, he should be allowed to have the interest of Lockhart in the estate, whatever that may be. But this could only be to stop interest on the amount thus misappropriated during his life; and that, provided it may not be needed to pay creditors who have the first and highest equity.

Our conclusion therefore is, that the settlement made in 1868, between the defendant and the acting executor cannot be disturbed—its *bona fides* being fully established by the verdict of the jury. But that the plaintiff is entitled to judgment in this court for so much of the sum then ascertained to be due, as is unpaid, including such amounts as were attempted to be paid in the private debts of the executor, whether endorsed or not, together with interest from the death of the executor, unless otherwise directed after a reference, which, if the parties so desire, may be had to the clerk of this court to ascertain the sum still due, and to inquire touching the debts of the testator. The plaintiff is also entitled to recover the costs of the action.

Error.                                   Judgment accordingly.