Plaintiff brought this action to recover damages for false imprisonment. He alleged that one McManus caused a warrant to be issued by a magistrate for his arrest upon the charge of an assault with a gun, and that he was taken into custody by the sheriff and (349) confined in jail for about a day. There was evidence tending to prove the false arrest and imprisonment, and the case turns upon the question whether McManus acted for and in behalf of the *Page 286 
defendant, as its agent, in suing out the warrant. The issues submitted, with the answers thereto, were as follows: "1. Was J. C. McManus the agent of the defendant company and in charge of the work? Ans. Yes. 2. Did J. C. McManus procure the plaintiff to be arrested, for the purpose of getting him out of the way, in order to put up the telephone and telegraph poles across the plaintiff's land while he (the plaintiff) was under arrest? Ans. Yes. 3. Was such arrest without probable cause, and for the purpose of enabling the defendant's agents and servants to put up the telephone and telegraph poles upon said land claimed by the plaintiff? Ans. Yes. 4. Did the defendant company, by its agents and servants, put up telephone and telegraph poles across the land claimed by the plaintiff, while the plaintiff was under arrest, and still continue to keep said poles and continue to use them? Ans. Yes. 5. What damage, if any, is the plaintiff entitled to recover? Ans. $900."
There was evidence tending to show that the American Telephone and Telegraph Company was extending its line into Cumberland County, and that McManus was in charge of a squad of hands who were putting up poles and stringing wires on them near the plaintiff's home. Plaintiff testified that "McManus was having the poles put up, the wire strung, and telling the hands where to go and what to do. There were thirty-five or forty hands, and McManus was in entire control." Another witness, John C. Ratley, testified: "I saw McManus in charge of a crowd of hands, pushing them on, hurrying them up. I stayed with him a while and then came back home. He had about fifty hands." There was also evidence tending to show that plaintiff had forbidden McManus from erecting poles on his land, and that the arrest (350) was made in order to put him out of the way until the work could be done, McManus having threatened beforehand to put plaintiff out of the way until the hands could do the work. The poles were put up and the wire strung while the plaintiff was under arrest, or in jail. McManus called at the home of the officer and told him he wanted the arrest made, and that it must be done that evening. He hired a team, and an officer went with him to the plaintiff's house and made the arrest. McManus then went to the place where the hands were working, and said that he wanted the wire put up and that he would pay double wages for the work done after night. They commenced work about half hour after sundown and continued into the night, and the poles were put up and the wire strung. When plaintiff refused to permit them to construct the line upon his land, and ordered them to leave, McManus replied, "I will put you out of the way, or I will have the poles up before sundown." When the case was called for trial *Page 287 
before the justice, McManus failed to appear, and the plaintiff was discharged. The justice found that the prosecution was frivolous and malicious and taxed McManus with the costs. Defendant introduced testimony tending to show that it had two departments engaged in the building of its line, the right of way, and the construction departments, and that Fred Linson was foreman of the construction department and McManus was assistant foreman and employed by Linson, the latter having been appointed by Campbell, the superintendent of construction; that Jackson assaulted McManus with his gun, and that the arrest had nothing to do with the work of the company, and was not authorized by the company or any of its agents; that Jackson signed a "voucher" in the regular form, giving defendant the right to build, operate and maintain its line on the land, stating that it was his wife's property, and afterwards claimed the land as his own and refused to carry out the agreement, and that the work was done by Linson's force in the belief that defendant had secured the right to use it, and without any reference to plaintiff's arrest; that none (351) of the agents or servants of defendant was authorized to arrest the plaintiff, and that McManus was not with the force when the arrest was made. These are substantially the facts which the testimony tended to establish on either side, and which are necessary to be stated for an understanding of the case. The defendant's counsel asked that certain instructions be given to the jury, which will be hereafter noticed. After a motion for a new trial, which was refused, judgment was entered upon the verdict. Defendant excepted and appealed.
The principal questions discussed in this Court related to the competency of the acts of McManus as proof of his agency for the defendant, and to the liability of the defendant for his conduct in unlawfully causing the plaintiff's arrest. The defendant's counsel contended that no authority to bind the defendant had been shown, and that his acts were not competent to show any such authority, but that it must be established, if at all, by evidence independent of his acts and declarations. It is common learning that acts and declarations of a third person are not evidence against a party unless such third person be his agent, and it is equally well settled that the agency must be first shown, otherwise than by such acts and declarations, before they are admissible. The court must be satisfied that the agency has been shown, at least prima facie, before anything that *Page 288 
the alleged agent has said or done, can be submitted to the jury as evidence. Williams v. Williamson, 28 N.C. 281; Grandy v. Ferebee,68 N.C. 356; Francis v. Edwards, 77 N.C. 271; Gilbert v. James, 86 N.C. 244; Daniel v. R. R., 136 N.C. 517. But this elementary (352) rule has not been violated in this case, and the reason upon which it is founded does not apply to the evidence supposed to fall under its condemnation. The court expressly charged the jury that they must not consider any declarations of McManus upon the question of his agency, but that they must first find upon the evidence, excluding his declarations, that he was the agent of the defendant, in charge of its work, and authorized to act in its behalf, in constructing the telegraph line, before any of his acts done, or declarations made in the prosecution of the agency, could become competent against the defendant. In passing upon the question of agency, the court did permit the jury to consider "any evidence of the acts of McManus in connection with the work of the defendant, and whether the defendant was putting up the poles on the land claimed by the plaintiff, and whether McManus was in charge of the construction work with authority, and whether he was in control of the labor and material, and gave directions" as to how the work should be done. But what we understand the court to mean by this instruction is that if McManus, by and with authority of the company, was doing the work described, he was in law the agent of the company to the extent of charging it with liability for his acts so done in furtherance of the principal's business, and we think the jury must have so understood it. Thus construed, the charge did not leave to the jury the bare acts of McManus as evidence of his agency, which would clearly have been error, but the jury were required to consider all the evidence for the purpose of finding whether he had the authority to act as he did, and the particular acts of McManus were mentioned so that the jury might intelligently apply the evidence, and ascertain whether he possessed authority to do those particular acts. There was evidence of his authority, for it must be remembered that the defendant's witness, Fred Linson, testified that he was foreman of construction, and McManus was his assistant. It makes no (353) difference that he was employed directly by Linson. By virtue of his employment, he become the servant of the defendant. He was not, perhaps, in the strict and technical sense, its agent, but its servant. In either relation, the principal or the master, as the case may be, is chargeable with liability for his acts done in the course of his employment and in furtherance of the business he had in charge.
This brings us to the consideration of the other question, as to the liability of the defendant for the act of McManus, in arresting the *Page 289 
plaintiff. Whoever commits a wrong is liable for it, and it is immaterial whether it be done by him in person or by another acting by his authority, express or implied. Qui facit per alium facit per se. Upon this maxim of the law is founded the doctrine that the principal is liable for the tort of his agent, and the master for the tort of his servant. If the wrongful act is done by express command of the master, or even if he has afterwards made it his own by adoption, there is no difficulty in applying the rule; but it is otherwise when the liability must proceed only from an implied authority. Where the servant does a wrong to a third person, the rule of respondeat superior applies, and the master must answer for the tort, if it was committed in the course and scope of the servant's employment, and in furtherance of the master's business. "A servant is acting in the course of his employment, when he is engaged in that which he was employed to do, and is at the time about his master's business. He is not acting in the course of his employment, if he is engaged in some pursuit of his own. Not every deviation from the strict execution of his duty is such an interruption of the course of employment as to suspend the master's responsibility; but, if there is a total departure from the course of the master's business, the master is no longer answerable for the servant's conduct." Tiffany on Agency, p. 270. We see, therefore, that the master is liable, even if the act is willful and deliberate, provided it was committed in the course of the employment and for (354) the master's purposes, and not merely for the servant's private ends. Tiffany, supra, 273; Pierce v. R. R., 124 N.C. 83; Cook v. R. R.,128 N.C. 333. In this case the jury have found that the defendant, by its servant, caused the plaintiff to be unlawfully arrested for the purpose of putting him out of the way, so that its agents and servants might erect telephone and telegraph poles on his land. If this is not an act done in the course of the employment and in furtherance of the master's business, for his benefit and advantage, it would be hard to conceive of one which would come under that class. The case is in principle like that of R. R. v.Harris, 122 U.S. 597, which has, at least twice, been approved by this Court, Hussey v. R. R., 98 N.C. 34; Redditt v. Mfg. Co., 124 N.C. 100. In Harris's case the defendants by servants committed, it is true, a direct and violent trespass upon the lands in order to carry on their master's work, and in doing so shot and injured the plaintiff; but is there any difference in law between the two cases? It is not the quality of the act that determines a master's liability, but the fact that it is done by his implied direction, that is, within the scope of the servant's authority, in the course of his employment and in furtherance of his master's interests.Daniel v. R. R., *Page 290 supra; Daniel v. R. R., 117 N.C. 592; Kelly v. Traction Co., 133 N.C. 418;Lovick v. R. R., 129 N.C. 427; Williams v. Gill, 122 N.C. 967;Pierce v. R. R., and Cook v. R. R., supra. It was in this case a question for the jury under proper instructions from the court, whether McManus in arresting the plaintiff was performing his master's business, or was engaged in some pursuit of his own. Hussey v. R. R., and Daniel v. R. R.,supra; Tiffany on Agency, 271. The court charged fully and correctly in respect to this matter.
Redditt v. Mfg. Co., supra; Willis v. R. R., 120 N.C. 508; Moore v.Cohen, 128 N.C. 345, and Daniel v. R. R., 136 N.C. 517, cited by the defendant's counsel, do not militate against our conclusion in (355) this case. In those cases the wrongful act of the agent, attempted to be imputed to his principal, was clearly not within the course of the agent's employment, or within the scope of his authority; while in this case there is evidence that the tort was committed directly in furtherance of the master's business, which was then being performed by his servant. This distinction is recognized in the cases cited, especially in Willis v. R. R., supra, and in Daniel v. R. R., 136 N.C. 517.
We will now consider the defendant's prayers for instructions. The first as to the declarations of McManus was given. The second, third and fourth, to the effect that there was no evidence of his agency, or of his authority to do the particular act, were properly refused, as we have shown. The fifth prayer, that the acts of the agent, to bind the principal, must be within the scope of his authority, was not germane to the issues as framed, but it was substantially given by the court in charging upon the issues as submitted to the jury, or the defendant at least got the full benefit of the instruction requested, though not in the form it was asked to be given. The seventh prayer as to punitive damages, was properly refused. The court charged correctly when it permitted the jury to award punitive damages. If McManus, as the jury found, arrested the plaintiff, not because the latter had assaulted him, but to put him out of the way, and thereby prevent his resistance to an entry upon the land, it was a case where vindictive damages might well be allowed by the jury in addition to compensation for the wrong. The court in its charge made the question of probable cause turn upon whether the plaintiff had or had not assaulted McManus, and they having decided that there was no probable cause, it follows that they found there was no assault, and that the arrest was wholly unjustifiable, and a wanton, high-handed and oppressive act, for which punitive damages may be allowed. Remington v. Kirby, 120 N.C. 320. The (356) verdict was moderate, in view of the circumstances, and the *Page 291 
jury do not seem to have allowed much, if anything, in the way of exemplary damages. "The doctrine is well settled that the jury, in addition to compensatory damages, may award exemplary, punitive or vindictive damages, sometimes called `smart money,' if the defendant has acted wantonly or with criminal indifference to civil obligations" (R. R. v. Prentiss, 147 U.S. 106), or (the defendant) has been guilty of an intentional and willful violation of the plaintiff's rights.R. R. v. Arms, 91 U.S. 489; Hansley v. R. R., 117 N.C. 565. In the sixth prayer for instructions, the defendant requested the court to charge that if the plaintiff assaulted McManus with his gun, the latter had the right to have him arrested and the defendant would not then be liable, which was given with the following qualification — unless the jury further find that McManus did not have the plaintiff arrested for the assault, but in order to get rid of him so that the defendant's work could go on. The cause of action in the complaint is for false imprisonment, while the issues as framed by the court mainly presented a case of malicious abuse of process. In the latter, it makes no difference whether there was probable cause for issuing the process or not. It differs from malicious prosecution in two respects: first, in that want of probable cause is not an essential element, and, second, in that it is not necessary that the original proceedings should have terminated; and it differs from false imprisonment in that, among other things, a warrant valid on its face is no defense if in any respect there has been an abuse of the process. 1 Jaggard on Torts, pp. 632-634. "An action for damages," says Jaggard, "lies for the malicious abuse of lawful process, civil or criminal, even if such process has been issued for a just cause, and is valid in form, and the proceeding thereon was justified and proper in its inception, but injury arises in consequence of abuse in subsequent proceedings." In view of the principles stated and supported by the authorities cited, we cannot see any error in the amendment by the court of the instruction asked in the sixth (357) prayer. The jury found that there was no assault by the plaintiff, and that there was a clear abuse of the process of the court.
We think his Honor submitted to the jury all the questions involved with the utmost fairness, and explained fully the principles of law applicable to the case. The charge was as favorable to the defendant as it was entitled to expect under the evidence. There was no error in refusing to submit the two issues tendered by the defendant. It had the full benefit of them, as they were embraced by those which were submitted, and this is all that is required. Warehouse Co. v. Ozment, 132 N.C. 839; Deaver v.Deaver, 137 N.C. 240. *Page 292 
We do not approve of issues which, as in this case, embody evidentiary facts instead of the ultimate facts to be found by the jury, and which are therefore the only issuable facts. Grant v. Bell, 87 N.C. 34; Patton v.R. R., 96 N.C. 455. But we cannot see that any harm has come to the defendant by reason of this defect in the issues, as the facts necessary to support the judgment sufficiently appear. Patterson v. Mills, 121 N.C. 258;Ratliff v. Ratliff, 131 N.C. 425. We find no reversible error in the proceedings of the court below.
No error.
Cited: Sawyer v. R. R., 142 N.C. 5, 8; R. R. v. Hardware Co.,143 N.C. 59; Roberts v. R. R., ib., 178; Clark v. Guano Co., 144 N.C. 71;Stewart v. Lumber Co., 146 N.C. 68, 75, 102, 114, 115; Jones v. R. R.,150 N.C. 480; Wright v. R. R., 151 N.C. 534; McCormick v. Williams,152 N.C. 640; Marlowe v. Bland, 154 N.C. 143; Warren v. Lumber Co., ib., 38; Berry v. R. R., 155 N.C. 292; Saunders v. Gilbert, 156 N.C. 477;Dover v. Mfg. Co., 157 N.C. 327; May v. Tel. Co., ib., 421; Bucken v. R.R., ib., 447; Seward v. R. R., 159 N.C. 258; Wright v. Harris, 160 N.C. 545;Fleming v. Knitting Mills, 161 N.C. 439; Humphries v. Edwards,164 N.C. 156; Moore v. R. R., 165 N.C. 448; Hodges v. Wilson, ib., 328;McGowan v. Mfg. Co., 167 N.C. 196; Webb v. Tel. Co., ib., 487; Carpenterv. Hanes, ib., 557; Gurley v. Power Co., 172 N.C. 694; Realty Co. v.Rumbough, ib., 747; Jerome v. Shaw, ib., 862; Ange v. Woodmen, 173 N.C. 35;Potato Co. v. Jeanette, 174 N.C. 240; Riley v. Stone, ib., 601; Adamsv. Foy, 176 N.C. 696; Cotton v. Fisheries Co., 177 N.C. 59; Rivenbarkv. Hines, 180 N.C. 242; Clark v. Bland, 181 N.C. 112; Munick v. Durham,ib., 194.
(358)