SKOW, Appellant, v. STEELE et al., Respondents

(49 N. W.2d 24)

(File No. 9224.   Opinion filed August 7, 1951)

Rehearing denied September 10, 1951

**James T. Brick, Everett A. Bogue**, Vermillion, for Defendants and Appellants.

**S. Norman Jaquith,** Vermillion, **Henry C. Mundt,** Sioux Falls, for Plaintiff and Respondent.

RUDOLPH, P. J.   The jury awarded plaintiff damages for an assault and battery made upon him by the defendant, John W. Steele.   By its verdict the jury also assessed the damages against the defendant, Lee A. Steele.   The major dispute in this appeal concerns the liability of Lee.   Both defendants have appealed.   We affirmed the judgment.

The facts considered in their aspect most favorable to the jury's verdict are as follows:   Lee owns several farms in Clay County.   John, Lee's brother, has for a number of years, acted as Lee's agent in renting, collecting the rents and generally supervising the operation of the farms through the various tenants.   The plaintiff rented one of the farms in the spring of 1940 and continued as a tenant upon this place until the events which gave rise to this lawsuit occurred.   In 1949 difficulties arose between the plaintiff on one side and the defendants on the other over the rental of the farm.   The son of the plaintiff and the son-in-law of John became involved to the extent of a fight which resulted in John's son-in-law pleading guilty to a charge of assault and battery.   Following this encounter there was trouble between the parties over the division of certain corn located on the farm.   Finally with the aid of lawyers agreement was made as to the division of this corn.   Plaintiff, according to his testimony, acted upon this agreement and shelled and hauled certain corn to an elevator in Gayville.   Thereafter the Steeles claimed some interest in the corn which palintiff had hauled to Gayville and advised the elevator not to make payment to plaintiff.   There remained on the farm other corn which concededly belonged to Steele under the agreement but about which there was some dispute as to the amount.   On August 5th, 1949, corn shellers came into the farmyard and advised plaintiff that they were going to shell the corn then on the farm for Mr. Steele.   Plaintiff advised a trucker that he did not want that corn shelled until Mr. Steele released his corn in the elevator at Gayville.   The trucker left the farm and plaintiff then tried to contact his lawyer but was unable to do so.   When plaintiff returned to the farm, John Steele and the shellers were there making ready to shell the corn.   The plaintiff describes the subsequent events as follows:   "The first thing I asked Steele, I

said, 'What are you going to do here.' And he said, 'I am going to shell this corn.' And I said, 'You had better release mine first' And he come directly towards me and he grabbed me by the collar and he said, 'I have taken enough out of you.' And down I went and he just commenced to beat hell out of me."

On cross-examination plaintiff testified that he did not attempt in any way to prevent either the shellers or Steele from shelling the corn. However, we think it clear that this testimony must be considered in the light of plaintiff's testimony on direct examination as to what actually transpired between him and John.

In support of the contention that Lee is not liable for the assault committed by John, appellants cite and strongly rely upon the two opinions in the case of Waaler v. Great Northern Ry. Co., 18 S. D. 420, 100 N.W. 1097, 70 L.R.A. 731, Id., 22 S. D. 256, 117 N.W. 140, 18 L.R.A.,N.S., 297. In the first opinion it was held that the act of a railroad employee under the direction of his foreman, who had been sent by the general superintendent to erect a snow fence upon private property of an abutting owner, in assaulting an employee of the latter, who had been sent by the owner of the property to remonstrate against and forbid the erection of the fence, was not within the scope of his employment and the railroad company was not liable therefor. When the case was before the court the second time it was alleged and established that " 'after being advised by the said Henry Doust [foreman] and said crew at said time that they were instructed to construct said fence by said defendant company, and proposed and intended so to do, notwithstanding the protest of the said plaintiff, for said Berit Pramhus [owner of the land], plaintiff said to said crew then and there that he would remove such part of the fence then constructed, if it was not removed, and would remove any other fence erected upon the land of the said Berit Pramhus, and had with him at said time an ax for the purpose of * * * preventing the trespass upon the said land of the said Berit Pramhus so being committed, and threatened to be committed by the said defendant company by and through the section crew.' " The court in the second opin-

ion held, under the facts then presented, the assault by the cmployee of the railroad company was within the scope of his employment.

These two opinions of this court are cited in the footnotes to Sec. 573, 35 Am.Jur., Master & Servant, pages 1006 and 1007, the first in support of the statement, "Formerly, the employer quite generally escaped liability for the consequences of assaults of his employees upon the theory that th acts complained of were outside the scope of employment, * * *;" the second in support of the statement, "* * * but the modern tendency is to hold the employer accountable wherever the assault has resulted from a discharge of the duties of the service, although remotely and indirectly connected therewith." Commenting on the first opinion the author of the annotation to this case in 70 L.R.A. 733, states:

"The true rule, and the one with which the majority of the decisions harmonize, seems to be that, for the acts of the servant, within the general scope of his employment, while engaged in his master's business, and done with a view to the furtherance of that business and the master's interest, the master will be responsible, even though the acts be done wantonly and wilfully; but (infra, V.), if the servant goes outside of his employment, and, without regard to his service, maliciously, or in order to effect some purpose of his own, causes damage to another the master is not responsible.

"Jackson v. American Tel. & Tel. Co. [139 N.C. 347, 51 S.E. 1015, 70 L.R.A. 738] is a conspicuously clear exponent of the first part of the rule above set out.

"But the correctness of the decision in Waaler v. Great Northern R. Co. [18 S. D. 420, 100 N.W. 1097, 70 L.R.A. 731] is not so clear, judged by this rule. The court seems to attempt to decide whether the servant's act was within the line of his duty,—something he ought to have done,—rather than whether it was done in the furtherance of his master's interests in contradistinction to his own. The decision is thus reached from an entirely different standpoint, viz., the master's assent, rather than the servant's motive. It is obvious that this doctrine excludes all possibility of the master's liability for the servant's wilful or ill-advised acts, al-

though done by him in his zeal for the furtherance of his master's interests. It would seem, from a review of the decisions, that such a doctrine, while formerly countenanced, has been gradually left behind, and that the master is now held to a stricter rule of liability."

■ We are of the opinion that this court aligned itself with the so-styled modern view in its second opinion. This view is in accord with our statutory provisions. SDC 3.0309 provides, "* * * a principal is responsible to third persons for the * * * wrongful acts committed by such agent in and as part of the transaction of such business; * * *". It would seem, accepting this view, that the complaint considered in the first opinion in the Waaler case stated a cause of action, and the issue of whether the assault was committed in prosecution of the master's business should have been submitted to a jury. The cases cited and relied upon by the court in the second opinion, especially the case of Jackson v. American Tel. & Tel. Co., 139 N.C. 347, 51 S.E. 1015, 70 L.R.A. 738, do not, in our judgment, support the result reached in the first opinion. We are of the view that under the facts alleged in the complaint in the first Waaler case a jury might reasonably have found the assault was committed to get the plaintiff out of the way, and thereby, permit the section crew to erect the fence unmolested.

■■ Whether the wrongful act was committed as a part of the transaction of the master's business is generally for the jury's determination. This is so because the servant's motive is usually a material issue. Thus in this case the real question presented is whether John committed the assault as a result of his desire to get the corn shelled and carted away, or whether he assaulted plaintiff simply to effect some purpose of his own. It might be the evidence would support a finding by the jury either way, but we think it clear the evidence is amply sufficient to support the jury in its finding that the assault was in the prosecution of the business at hand. Admittedly John was engaged in Lee's business in getting this corn shelled, and the words which lead up to the assault were spoken while John was in the actual work of making ready to shell this corn. There was the background of trouble over this and other corn

raised on the premises, and when plaintiff said in effect, "You had better release my corn at Gayville before shelling this corn", the jury could reasonably believe that John foresaw trouble or delay in the shelling of the corn, and proceeded to forestall such trouble or delay by assaulting plaintiff, and getting him out of the way.

We do not believe a discussion of cases would be helpful. The cases on the subject are legion, and each is dependent upon the peculiar fact situation presented. Many of the cases are cited in support of the texts in 3 C.J.S., Agency, §§ 255, 258, and 35 Am.Jur., Master and Servant, Sec. 573.

The court, by its Instructions 7 and 8, properly instructed the jury concerning the liability of the master for the acts of his servant. We are convinced, therefore, that no error was committed by the trial court in refusing certain instructions requested by defendant. The substance of requested Instructions 5 and 10 was covered by other instructions given by the court.

We have reviewed the entire testimony with reference to the injuries sufferd by plaintiff. Sufficient to say is that in our opinion the damages awarded are not excessive.

Plaintiff was asked, "Can you tell us what you paid the doctors at Crofton, Nebraska, for any treatments after August 5, 1949 that had anything to do with this fight on August 5, 1949?" There was no objection to this question and plaintiff answered. After both sides had rested plaintiff moved to amend his complaint to include as damages the amount paid to the doctors at Crofton and defendants objected thereto as follows: "That the record does not even show that the so-called Nebraska doctors are licensed medical doctors, that it does not show that the services rendered by such doctors were rendered by them as a necessary consequence of any injuries that were sustained by the plaintiff in this case."

The question asked plaintiff limited the payments made to the doctors to payments for treatments of injuries resulting from this assault, and defendant not having objected to the qualification of the doctors during the trial, we believe

the trial court was fully justified in permitting the amendment.

The judgment appealed from is affirmed.

All the Judges concur.